In re Robert W. HICKEY, Debtor.

Douglas J. LUSTIG, Trustee, Plaintiff,

v.

Robert W. HICKEY, Margaret M. Hickey and Gary E. Wood, Defendants.

Bankruptcy No. 92–22292.
Adv. No. 93–2133.

United States Bankruptcy Court,
W.D. New York.

June 27, 1994.

Warren B. Rosenbaum, Rochester, NY, for trustee.

Paul L. Leclair, Rochester, NY, for Gary E. Wood.

C. Bruce Lawrence, Rochester, NY, for Robert & Margaret Hickey.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On August 24, 1992, the Debtor, Robert W. Hickey (the "Debtor"), a certified public accountant, filed a petition initiating a Chapter 7 case. On May 17, 1993, the Chapter 7 Trustee (the "Trustee") filed an adversary proceeding against the Debtor, Margaret M. Hickey ("Margaret Hickey"), the Debtor's non-filing spouse, and Gary E. Wood ("Wood") seeking to avoid various transfers and obligations as fraudulent pursuant to Sections 544 and 550 of the Bankruptcy Code and applicable New York State law.

The Court conducted pre-trial conferences in connection with the adversary proceeding on August 24, 1993, October 19, 1993 and November 23, 1993, a Trial Calendar call on February 16, 1994 and a trial on March 23, 1994, March 24, 1994 and April 15, 1994.

The following facts are undisputed:

(1) On July 7, 1982, the Debtor's aunt, Sarah L. Hickey, died testate leaving a Last

Will & Testament duly admitted to probate on January 7, 1985 in which she specifically devised to the Debtor a forty percent (40%) undivided fee interest in real property commonly known as 7215 Pittsford–Palmyra Road, Perinton, Monroe County, New York ("Pittsford–Palmyra Road").

(2) On December 1, 1988, the Debtor executed an Assignment (the "Assignment") whereby he assigned all of his right, title and interest in and to Pittsford–Palmyra Road to Margaret Hickey. The Assignment indicated that the right, title and interest being assigned was conveyed to the Debtor in Article Four of the Will of Sarah L. Hickey and that the consideration for the transfer was "less than $100.00."[1]

(3) On or about September 19, 1990, Margaret Hickey, along with Thomas H. McLean and Marjorie H. McLean, as landlords, executed a lease of Pittsford–Palmyra Road (the "Pittsford–Palmyra Road Lease") to John and Connie Delmarle (Def.Ex. 17).

(4) The Assignment was recorded in the Monroe County Clerk's Office on November 16, 1990 in Liber 8026 of Deeds, page 39.

(5) On November 26, 1991, Marjorie H. McLean, as Executor of the Estate of Sarah L. Hickey, executed a deed (the "Executor's Deed") to Margaret Hickey covering the 40% interest in Pittsford–Palmyra Road devised to the Debtor which was recorded in the Monroe County Clerk's Office on December 4, 1991 at Liber 8152 of Deeds, page 501. The Executor's Deed stated:

> This conveyance is made without consideration for the purpose of confirming title in the Grantee to an undivided forty percent (40%) interest in and to the above-described premises. The said premises were owned by Sarah L. Hickey at the time of her death. Sarah L. Hickey died on July 7, 1982 a resident of Monroe County, New York, leaving a Last Will and Testament dated July 2, 1982, which was admitted to Probate in Monroe County Surrogate's Court on January 7, 1985, and pursuant to which, the Grantor herein was appointed

Executor. Under Article FOUR of said Will an undivided forty percent (40%) interest of the above-described property was devised to Robert W. Hickey. Said Robert W. Hickey assigned all of his interest in and to said property to Margaret Hickey by Assignment of Interest dated December 1, 1988 and recorded in the Monroe County Clerk's Office on November 16, 1990 in Liber 8026 of Deeds at page 39.

(6) On December 10, 1991, Margaret Hickey executed and delivered a Collateral Security Mortgage in favor of Wood (the "Wood Mortgage") in the principal amount of $115,000.00 covering the 40% interest in Pittsford–Palmyra Road which was recorded in the Monroe County Clerk's Office on December 19, 1991 at Liber 10762 of Mortgages, page 656. The Wood Mortgage stated:

> Hereby intending to describe and mortgage the Mortgagor's undivided forty percent (40%) interest in and to the above described premises, the same having been assigned to the Mortgagor by assignment dated December 1, 1988 and recorded in the Monroe County Clerk's Office on November 16, 1990 in Liber 8026 of Deeds at page 39 and having been confirmed by Deed recorded in the Monroe County Clerk's Office on December 4, 1991 in Liber 8152 of Deeds at page 501.

(7) The Wood Mortgage recited that it was intended as continuing security for the payment of any and all indebtedness or liability which Wood might hold against Margaret Hickey or the Debtor.

(8) On or about December 17, 1991: (a) Margaret Hickey borrowed $115,000.00 from First National Bank of Rochester ("First National") and executed a Master Note payable on demand in the amount of $115,000.00 (the "Master Note"); (b) the Debtor executed a Continuing Guaranty to First National of all of the indebtedness of Margaret Hickey, limited to the principal sum of $115,000.00; (c) Wood pledged 5,000 shares of stock as security to First National for the obligations of Margaret Hickey to First National, as evidenced by the Master Note; and

---

1. This is a euphemism used in New York to indicate that in fact there was no monetary consideration for the transfer.

(d) Margaret Hickey and the Debtor executed an Indemnity Agreement in favor of Wood in connection with the loan to Margaret Hickey as guaranteed by the Debtor whereby they agreed to be jointly and severally liable to indemnify Wood for any loss or damage he might suffer as a result of his pledge of stock.

(9) $26,066.67 of the loan proceeds received from First National were used to pay off an existing unsecured loan due from the Debtor to First National. The balance of the loan proceeds, $88,953.33, were deposited into a First National checking account in the name of Margaret Hickey.

(10) There are unpaid creditors of the Debtor who were in existence prior to the execution of the Assignment. These creditors include Ronald B. Gould ("Gould"), a former partner with the Debtor in the accounting firm of Aspenleiter and Hickey which the Debtor withdrew from in February, 1988. In August, 1992 Gould received an American Arbitration Association award of $25,000.00 against the Debtor (Pl.Ex. 15) in an action which he commenced for damages provided for under the firm's partnership agreement as a result of the Debtor's withdrawal and subsequent representation of clients of the firm (the "Gould Action").

(11) On a May 11, 1988 Personal Financial Statement issued to Taylor Bolane Associates, Inc. (Pl.Ex. 17) the Debtor valued his interest in Pittsford–Palmyra Road at $400,000.

(12) On a December 4, 1989 Personal Financial Statement issued to Marine Midland Bank, N.A. a year after the Assignment was executed (Pl.Ex. 18) the Debtor listed a 40% interest in Pittsford–Palmyra Road and valued it at $500,000.

(13) A May 28, 1991 appraisal of Pittsford–Palmyra Road (Pl.Ex. 25) valued the entire property as of December 14, 1990 at $527,000.

In this adversary proceeding, the Trustee has alleged that: (1) the transfer by the Debtor to Margaret Hickey of his 40% interest in Pittsford–Palmyra Road (the "Hickey Transfer") was fraudulent under the provisions of Article 10 of the New York Debtor and Creditor Law and therefore can be avoided by the Trustee pursuant to Section 544(b) of the Bankruptcy Code, because such transfer was without consideration and was both constructively fraudulent and made with the actual intent to hinder, delay or defraud present or future creditors; and (2) the Wood Mortgage can be avoided by the Trustee pursuant to Section 550(a) of the Bankruptcy Code because Wood, although he took the Wood Mortgage for present value to secure a contingent debt, had not acted in good faith and without knowledge of the voidability of the Hickey Transfer, and therefore was not entitled to the shelter afforded by Section 550(b)(1).

Although the Debtor and Margaret Hickey initially interposed an Answer in the adversary proceeding, at a pretrial conference and at the time of trial their attorney advised the Court that they had no objection to, and would cooperate with, a transfer to the Trustee of any interest which either had in Pittsford–Palmyra Road. They indicated that: (1) they were unable to afford to continue with a defense of the adversary proceeding; (2) any proceeds realized by the Trustee from the liquidation of the interest after administrative expenses would first go to pay their otherwise nondischargeable tax debt; and (3) that their consent was not an admission that the Hickey Transfer was constructively or actually fraudulent.

Wood interposed an Answer in the adversary proceeding which asserted that the Wood Mortgage was given for fair consideration and without the actual intent to hinder, delay or defraud creditors. Wood also has asserted that he entered into the transactions with First National and the Hickeys in December, 1991 in good faith and without knowledge of the voidability of the Hickey Transfer.

## DISCUSSION

I. *Avoidability of the transfer from the Debtor to Margaret Hickey of his interest in Pittsford–Palmyra Road.*

Since the Hickey Transfer occurred more than one year prior to the filing of his bank-

ruptcy petition,[2] the Trustee is not able to avoid the Transfer as a fraudulent conveyance pursuant to the provisions of Section 548. However, the Trustee may avoid the Hickey Transfer pursuant to the provisions of Section 544(b)[3] if the Transfer is avoidable pursuant to the provisions of applicable state law, in this case Article 10 of the New York Debtor and Creditor Law which provides for the avoidance of fraudulent conveyances, by one of the Debtor's existing unsecured creditors who was in existence at the time of the Transfer.

■ Based on all of the facts and circumstances presented, the Court finds that the Hickey Transfer is avoidable by Gould and similarly situated unsecured creditors of the Debtor as a fraudulent conveyance pursuant to the provisions of Section 276 of the New York Debtor and Creditor Law[4] because there is sufficient evidence to conclude that the Transfer was made by the Debtor with the actual intent to hinder, delay or defraud creditors.

■ The burden of proof to establish actual fraud under Debtor and Creditor Law Section 276 is upon the creditor who seeks to have the conveyance set aside, and the standard for such proof is clear and convincing evidence. *Marine Midland v. Murkoff,* 120 A.D.2d 122, 126, 508 N.Y.S.2d 17 (1986), *appeal dismissed,* 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987). Fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act. *Marine Midland,* 120 A.D.2d at 128, 508 N.Y.S.2d 170.

Consideration of the following factors resulted in the Court's finding that the Hickey Transfer is an avoidable fraudulent conveyance pursuant to Section 276 of the New York Debtor and Creditor Law and Section 544(b) of the Bankruptcy Code:

(1) The Debtor and Margaret Hickey, although they originally interposed an answer to the Trustee's claim that the Transfer was an avoidable fraudulent conveyance, have consented to a re-transfer of the interest to the Trustee. Although the consent was explicitly stated to be without any admission that the transfer was an avoidable fraudulent conveyance, the Debtor and Margaret Hickey have nevertheless failed to come forward with sufficient credible evidence to rebut the relevant presumptions which exist under Article 10 of the New York Debtor and Creditor Law and related decisional law or to overcome the evidence presented by the Trustee. Wood has also failed in this respect.

(2) The reason put forward by the Debtor for the Hickey Transfer was that he was uninsurable for health reasons and therefore wished to provide security to his new bride and son. For an experienced certified public accountant this reason is not credible if the "security" he was referring to was legal or financial security rather than just an emotional sense of security. A specific devise to Margaret Hickey under the Debtor's will, as had been done by the Debtor's aunt, or a number of other vehicles could have provided Margaret Hickey with equivalent legal and economic security without removing the valuable interest from the Debtor's estate.

(3) Although the Assignment was executed in December of 1988, the Debtor listed his inherited interest in Pittsford–Palmyra Road

2. Whether the Hickey Transfer is deemed perfected when: (a) the Assignment was executed on December 1, 1988; (b) at the time of the execution of the Pittsford–Palmyra Road Lease on or about September 19, 1990; or (c) when the Assignment was recorded on November 16, 1990, it was more than one year prior to August 24, 1992.

3. Section 544(b) provides that:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under

applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

4. Section 276 of the New York Debtor and Creditor Law provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumes in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

a year later on his December 4, 1989 Financial Statement (this was not a joint financial statement) which was also a year before the Assignment was recorded. The inclusion of this asset of substantial value (listed at $500,000) on his financial statement could not have been a mere oversight by the Debtor, an experienced Certified Public Accountant.

(4) In applying for loan accommodations to First National Bank and Wood in 1991, the Debtor treated the interest in Pittsford–Palmyra Road as beneficially still his.

(5) The amounts listed by the Debtor for his accounting practice ($150,000) and his personal property ($20,000) on his May 1, 1988 Financial Statement (Pl.Ex. 17) may be overvalued, although there was no testimony or other evidence presented at trial as to the actual values of these assets or the standard of valuation used by the Debtor. Furthermore, this Financial Statement does not list the contingent liability which existed to Gould. Reasonable adjustments to the Debtor's assets and liabilities for these items might result in a reasonable inference that the Debtor, as an experienced Certified Public Accountant, may have believed that he would be rendered insolvent by the Hickey Transfer when the Assignment was executed on December 1, 1988.

(6) Demands on the Debtor had been made by Gould and his attorneys in May and June of 1988 for the payment of what were alleged as significant liabilities due as a result of the Debtor's February, 1988 withdrawal from Aspenleiter and Hickey and his subsequent representation of the firm's clients. In the face of such demands by Gould and having just started out on his own in an accounting practice, the Debtor's disposing of an asset of such significant value (over 70% of his alleged net worth as set forth on his May 11, 1988 Financial Statement) for no consideration further supports the reasonable inference of an actual intent to hinder, delay and defraud present and future creditors.

For the foregoing reasons and because of the consent of the Debtor and Margaret Hickey to the re-transfer, the Debtor's conveyance of his interest in Pittsford–Palmyra Road can be avoided as a fraudulent conveyance pursuant to Section 276 of the New York Debtor and Creditor Law and Section 544(b) of the Bankruptcy Code.

■ The Court finds that the Trustee has not met his burden to show that the defendant, Margaret Hickey, received the Hickey Transfer with actual intent to hinder, delay or defraud creditors, so that no attorney's fees will be assessed against her pursuant to Section 276–a of the New York Debtor and Creditor Law. However, the provisions of Section 276–a require that the Court fix a reasonable attorney's fee award against the Debtor.[5]

■ The Trustee has also alleged that the Hickey Transfer is avoidable pursuant to Sections 273, 273–a, 274 and 275 of the New York Debtor and Creditor Law.[6] With re-

---

**5.** Section 276–a of the New York Debtor and Creditor Law provides:

In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the bene-

fit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment. The fee so fixed shall be without prejudice to any agreement, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

Any award would take into account that there are multiple defendants and the Debtor agreed to a re-transfer of Pittsford–Palmyra Road early in the pretrial stage of the proceeding.

**6.** Section 273 of the New York Debtor and Creditor Law provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the con-

gard to the requirements of Section 273 of the New York Debtor and Creditor Law, the Trustee bears the burden of proving insolvency. *American Investment Bank, N.A. v. Marine Midland Bank, N.A.*, 191 A.D.2d 690, 692, 595 N.Y.S.2d 537 (1993). Based on the evidence presented, the Court finds that the Trustee has not met his burden to show that the Debtor was insolvent at the time of the Hickey Transfer which occurred at some time between December 1, 1988 and November 16, 1990 for purposes of Section 273.[7] The Court further finds that the provisions of Section 273–a of the New York Debtor and Creditor Law are not applicable since the Gould Action was not commenced until September, 1991. Furthermore, the Court finds that the Trustee has not met his burden to show that the Hickey Transfer is avoidable pursuant to the provisions of Section 274 or 275 of the New York Debtor and Creditor Law.

## II. *Avoidability of the Wood Mortgage Pursuant to Section 550.*

In this adversary proceeding, the Trustee asserts that Wood should not be afforded the shelter provided by Section 550(b)(1)[8] in connection with the Wood Mortgage, because, under all of the facts and circumstances of this case, although the Wood Mortgage was taken for value, it was not taken in good faith and without knowledge by Wood of the avoidability of the Hickey Transfer within the meaning of Section 550(b)(1) of the Bankruptcy Code.

More specifically, the Trustee has asserted and attempted to prove that: (1) Wood or his representatives were aware of such facts and circumstances which required that a reasonable inquiry be made into the Hickey Transfer to determine whether the Debtor was insolvent at the time of the Transfer or rendered insolvent by the Transfer; and (2) the additional facts and circumstances which such a reasonable inquiry would have disclosed would have indicated that the Hickey Transfer was avoidable as a fraudulent conveyance under Section 273 of Article 10 of the New York Debtor and Creditor Law.

The principal facts and circumstances which the Trustee alleges Wood or his repre-

---

veyance is made or the obligation is incurred without a fair consideration.

Section 273–a of the New York Debtor and Creditor Law provides:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Section 274 of the New York Debtor and Creditor Law provides:

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

Section 275 of the New York Debtor and Creditor Law provides:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

7. Although the attorneys for the Trustee and for Wood each pre-marked a July 31, 1990 Financial Statement of the Debtor as an exhibit, the Financial Statement was not admitted into evidence at the trial. This would have provided some evidence of the Debtor's opinion of his financial condition around the time when the Pittsford–Palmyra Road Lease was executed (September 19, 1990) and the Assignment was recorded (November 16, 1990). Wood attempted to have the financial statement admitted into evidence in connection with the testimony of a First National Bank officer concerning the 1991 loan negotiations, but the Trustee objected on relevancy grounds and the Court sustained the objection.

The Court, on its own, is unable and not required to restructure the Debtor's 1988 (Pl.Ex. 17) and 1989 (Pl.Ex. 18) Financial Statements and evidence of other indebtedness to come to a conclusion of Debtor's insolvency or to speculate as to the financial condition in 1990.

8. Section 550(b)(1) provides:

The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided.

sentatives (specifically his attorneys) were aware of which required a reasonable inquiry into the Debtor's financial condition at the time of the Hickey Transfer are:

(1) The Assignment was not recorded for nearly two years after its execution.

(2) The Assignment was between husband and wife and indicated that it was for no consideration.

(3) The Debtor's interest in Pittsford–Palmyra Road was of significant value (the appraisal [Pl.Ex. 25] which Wood or his representatives were aware of indicated that the Debtor's interest had a value of in excess of $210,000.00 as of December, 1990).

(4) The Hickey Transfer was within the six-year Statute of Limitations applicable to avoidance actions pursuant to Article 10 of the New York Debtor and Creditor Law.

(5) In 1991, only three years after the Assignment of this valuable asset, the Debtor was having financial difficulties (he explained the need for the loan was for him to pay some tax obligations and to provide needed cash-flow for his accounting business since his accounts receivable collections were slow and his business was off) which required the utilization of some, but not all, of the value of the recently transferred interest in Pittsford–Palmyra Road to obtain the necessary loan to assist him in curing or minimizing his financial problems.

(6) First National Bank had originally declined a request to loan the required monies to the Debtor.

(7) Wood knew that the Debtor had left his former accounting firm in the Spring of 1988 to start his own practice and that the termination involved some problems.[9]

Wood, on the other hand, has asserted and attempted to prove that at all times during the transactions with First National and the Hickeys he was acting in good faith and without knowledge of the voidability of the Hickey Transfer and that he was under no duty to inquire as to the financial condition of the Debtor at the time of the Hickey Transfer in that:

(1) Throughout the transactions with First National and the Hickeys he relied on his attorneys' advice.

(2) Even though his attorneys had reviewed an abstract of the title for Pittsford–Palmyra Road (Pl.Ex. 26) (the "Abstract") which showed: (a) the delayed recording of the Assignment; (b) that the Hickey Transfer was between husband and wife; and (c) that the Transfer involved a valuable asset and was for no consideration, the attorneys did not believe it was reasonable or necessary to inquire as to the financial condition of the Debtor at the time of the Transfer or into the possible voidability of the Hickey Transfer. Wood asserted that his attorneys had obtained a title insurance policy to protect his mortgagee interest and the title company had not raised any questions or concerns regarding the Hickey Transfer and there were no other items of record such as judgments, liens or lis pendens which indicated to him or his attorneys that there were any financial difficulties being experienced by the Debtor at either the time of the execution of the Assignment or its recording.

(3) Wood entered into the transactions with First National and the Hickeys as a courtesy to the Debtor, who had been his accountant for a number of years and who had helped him in a recent sale of his business where he obtained significant proceeds, and Wood had received nothing of value in connection with the transactions (no fee, payment of interest or other accommodation).

(4) To the extent that he was aware of the intentions of the Debtor and Margaret Hickey with respect to the use of the First National loan proceeds, their intentions were to use the proceeds to pay some of the Debtor's creditors and to help him maintain his accounting practice. This, Wood alleged, did not indicate any intention on the part of the Debtor and Margaret Hickey to defraud the Debtor's creditors.

9. The Trustee acknowledged that no one of these facts or circumstances by itself would be determinative, but that taken together they resulted in

Wood and his representatives having a duty of reasonable inquiry as to the Debtor's financial condition at the time of the Hickey Transfer.

At trial, John E. Blyth, Esq. ("Blyth") testified as an expert on behalf of the Trustee. Blyth, an attorney for over 30 years and an acknowledged expert in real estate law, testified that in his professional opinion an attorney in Western New York after examining the Abstract, even without being aware of the facts and circumstances surrounding the proposed Wood Mortgage transaction, should have been concerned about the Debtor's creditors and should have required some financial information to determine whether Section 273 of the New York Debtor and Creditor Law may have been violated at the time of the Hickey Transfer. Blyth further testified that the applicable time of the transfer for purposes of Article 10 of the New York Debtor and Creditor Law would be at the time of the delivery of the Assignment and that under New York law, recording gave rise to a presumption of delivery. Blyth further testified that, in his opinion, any time an abstract of title shows a transfer between what appears to be relatives for no consideration reasonable inquiry should be made into the solvency of the transferor if the applicable six year statute of limitations period has not run. Blyth also testified that if he were representing a mortgagee, such as Wood, he would have required evidence from the Debtor in connection with the Hickey Transfer, along with some third party verification, to satisfy what he believed was a duty of inquiry as to the solvency of the Debtor at the time of the Hickey Transfer to insure that Section 273 of the New York Debtor and Creditor Law had not been violated.

At trial, William P. Fletcher ("Fletcher"), an attorney in the firm which represented Wood in the transactions in question, including obtaining the Wood Mortgage, testified on Wood's behalf. Fletcher has practiced law for approximately thirteen years, worked for a number of years for several title companies and testified that in his career he has examined nearly 10,000 abstracts of title. Fletcher testified that he examined the Abstract (Pl.Ex. 26) to come to an opinion about the quality of the title, not because he had a duty to do so on behalf of Wood, since one of the conditions of Wood entering into the financial transactions with First National and the Hickeys was that the Debtor would pay

for a title insurance policy to insure the Wood Mortgage, but in an attempt to be overly cautious on behalf of his client. Fletcher testified that nothing in the Abstract or the surrounding facts and circumstances in connection with the Wood Mortgage led him to believe that there was any reason to inquire as to the solvency of the Debtor at the time of the Hickey Transfer. He simply considered the Hickey Transfer to be a gift and never inquired into or learned about the financial condition of the Debtor or Margaret Hickey at the time of the Transfer. Fletcher testified that there were no Monroe County or New York State Bar Association title standards which required an inquiry into the solvency of the transferor just because there was a transfer of record between spouses for no consideration within the six year statute of limitations period applicable to Article 10 of the Debtor and Creditor Law. Fletcher emphasized that in this case there were no judgments, liens, lis pendens or other matters of record which indicated that the Debtor had any serious or unusual financial or creditor problems in 1988 when the Assignment was executed, in 1990 when it was recorded, or in 1991 when the Wood Mortgage transaction was taking place. Fletcher testified if there were judgments or liens or other such matters of record, an inquiry would have been made. Fletcher also testified that in his opinion none of the other facts and circumstances surrounding the transactions with First National and the Hickeys of which he was aware indicated a reason to inquire into a possible violation of Section 273 of Article 10 of the New York Debtor and Creditor Law. Fletcher further testified that it was at his insistence that the Executor's Deed was executed and recorded, because he felt that it would correct and provide a better chain of title in connection with the 40% interest in Pittsford–Palmyra Road since the use of the Assignment rather than a deed left the title somewhat confusing.

■ The Bankruptcy Code does not define "good faith" or "knowledge" of the voidability of the transfer avoided as those phrases are used in Section 550(b)(1). From the cases that have decided this issue, it is clear that good faith is not limited to a lack of actual

knowledge of actual fraud and that for purposes both of "good faith" and "knowledge," there also must be a lack of knowledge of circumstances requiring further investigation as to whether the transfer would be voidable.[10]

I find the testimony of both Blyth and Fletcher fully credible. I believe that many experienced real estate attorneys like Fletcher, especially if they have no special training or experience in creditors' rights and bankruptcy law, would not focus on the potential voidability of a transfer like the Hickey Transfer as a fraudulent conveyance under federal or state law in the absence of facts and circumstances directly indicating that a transferor was having financial or creditor problems at the time of a transfer. On the other hand, I believe that just as many experienced real estate attorneys like Blyth would focus on any transfer of a valuable asset between husband and wife for no consideration within the applicable six year statute of limitations under New York State law as being a transfer which requires some inquiry into the financial condition of the transferor to determine if there has been a violation of Section 273 of the New York Debtor and Creditor Law. This is especially true if the original transferor appears to be receiving a clear direct or indirect financial benefit from the current transfer proposed.

This Court believes that in real estate transactions in New York State where abstracts of title are still reviewed in connection with the transactions and when the abstract sets forth a transfer of a valuable asset between a husband and wife for no consideration within the six year statute of limitations applicable to Article 10 of the New York Debtor and Creditor Law, to obtain the shelter of Section 550(b)(1) of the Bankruptcy Code, a party must make a reasonable inquiry into the solvency of the transferor at the time of the transfer.[11] In this regard, real estate is an unique asset where there is an abstract of title which discloses the chain of title and whether there was consideration for a transfer in the chain. For example, if Margaret Hickey had proposed to pledge a bank account, certificate of deposit, marketable securities or a variety of other personal property assets to First National or Wood, absent some actual knowledge of the circumstances under which she acquired the asset or other reason to inquire, First National and Wood would not have been under a duty to inquire as to how or from whom she obtained title to the asset or whether there was a fraudulent conveyance to her of the asset.

Although finding such a duty of inquiry with respect to the financial condition of the transferor in circumstances where there is a husband and wife transfer of a valuable real estate asset for no consideration may result in subsequent transfers or mortgages of the property within the six year statute of limitations being somewhat more complicated and more expensive to close, there is a legislative policy under both New York State law and the Bankruptcy Code to deter and avoid transfers in fraud of creditors. On the other hand, I am not aware of any legislative policy to encourage the transfers of valuable real estate between spouses for no consideration. If spouses elect to make such transfers of real estate, they and their attorneys should be aware that they need to be able to demonstrate within the applicable statute of limitations period that such transfers were not in violation of Section 273 of the New York Debtor and Creditor Law, and therefore not in fraud of creditors, because the transferor was not insolvent at the time of the transfer

---

10. *In re Kanterman*, 97 B.R. 768, 779 (Bankr. S.D.N.Y.1989), *aff'd*, 108 B.R. 432 (S.D.N.Y. 1989) and the cases cited therein including *Bonded Financial Services v. European American Bank*, 838 F.2d 890, 898 (7th Cir.1988) and *In re Concord Senior Housing Foundation*, 94 B.R. 180, 183 (Bankr.C.D.Cal.1988).

11. The Court is not suggesting that the party seeing such a transfer in the abstract must inquire into whether there was a transfer made with the actual intent to hinder, delay or defraud creditors (New York Debtor and Creditor Law Section 276 and Section 548(a)(1) of the Bankruptcy Code) or an otherwise constructively fraudulent transfer (New York Debtor and Creditor Law Sections 274 and 275 and Sections 548(a)(2)(B)(ii) and 548(a)(2)(B)(iii) of the Bankruptcy Code), but only transfers by an insolvent or individual who would be rendered insolvent (New York Debtor and Creditor Law Section 273 and Section 548(a)(2)(B)(i) of the Bankruptcy Code).

or was not rendered insolvent by reason of the transfer or there are no longer any creditors of the transferor which existed at the time of the transfer. The attorneys for parties proposing to make such transfers are already advising them of the provisions of Article 10 of the New York Debtor and Creditor Law. To advise them to prepare the necessary evidence at the time of the transfer to demonstrate that there is no Section 273 insolvency problem should not be much of an increased burden. If lack of insolvency cannot be clearly demonstrated or the parties do not wish to incur the cost to be able to demonstrate a lack of insolvency, the transfer will either not be made or the parties will assume the risk and complete the transfer.

There was considerable speculation offered at trial as to whether the title insurance company which issued Wood a mortgagee policy had, as Fletcher had, determined that there was no need to inquire as to the solvency of the Debtor at the time of the Hickey Transfer or whether it had determined that there was an acknowledged risk, but as insurance companies are in the business of doing, it had simply accepted and assumed the risk. If the answer is the latter, the duty of inquiry determined to exist in this decision presumably would have no effect when a title insurance policy is obtained in connection with a subsequent transfer or mortgage. If the answer is the former, perhaps the title insurance companies will work with attorneys and prospective transferors to develop guidelines for the acceptable demonstration that there has been no violation of Section 273 of Article 10 of the New York Debtor and Creditor Law when there is a transfer for no consideration of a valuable real estate asset between spouses.

Another concern expressed at trial was that there are many transfers of real estate between spouses made in connection with matrimonial actions which for recording purposes show that they are for no consideration. Since these actions are under state court supervision, it would seem that the rights of the parties and creditors can be clearly addressed and accommodated in such a way that any such transfers will not even

arguably be in fraud or violation of the rights of creditors.

On all of the facts and circumstances of this case, where in addition to being aware of the details of record in the Abstract regarding the Hickey Transfer, including that it was of a valuable asset for no consideration, Wood and his attorneys knew that the transferred asset was now being used to help the transferor (the Debtor) deal with his current financial difficulties so that he was getting a direct benefit from the asset, the Court finds that Wood and his attorneys had a duty to inquire as to the financial condition of the Debtor at the time of the Hickey Transfer to determine if the Hickey Transfer may have been avoidable by reason of Section 273 of the New York Debtor and Creditor Law.

 The trustee has the burden of proving that the defendant should not have the benefit of the shelter provided by Section 550(b)(1), because the defendant did not take the transfer for value and in good faith and that he had knowledge of the voidability of the transfer. See In re Medical Cost Management, Inc., 115 B.R. 406, 409 (Bankr. D.Conn.1990); In re Sarasota Plaza Assoc. Ltd. Partnership, 105 B.R. 109, 110 (Bankr. M.D.Fla.1989); In re Instrument Sales & Service, Inc., 99 B.R. 742, 746 (Bankr. W.D.Tex.1987). In this case the Court does not believe that the Trustee has met his burden of proof to show that the Debtor was insolvent or rendered insolvent by the Hickey Transfer or that any reasonable investigation by Wood or his attorneys into the financial condition of the Debtor at the time of the Hickey Transfer (sometime between December 1, 1988 and November 16, 1990) would have resulted in either of them obtaining any financial information which would have indicated that the Debtor was insolvent at the time of the Hickey Transfer or was rendered insolvent as a result of the Transfer.

Therefore, the Court finds that the Trustee has not met his burden to show that Wood did not act in good faith and without knowledge, including actual knowledge, and therefore, Wood is entitled to the shelter of Section 550(b)(1) and the Wood Mortgage cannot be avoided by the Trustee.

## CONCLUSION

The Hickey Transfer is avoided pursuant to Section 544(b); the Wood Mortgage is not avoidable pursuant to Section 550(a); and the Trustee's request for attorneys fees under Section 276–a of the New York Debtor and Creditor Law is granted as to the Debtor only in an amount to be set by the Court upon reviewing an application to be submitted by the Trustee within 30 days from the entry of this Decision and Order.

**IT IS SO ORDERED.**