**In re Sandra J. ALTMEYER, Debtor.**

**Mark S. Wallach, Trustee, Plaintiff,**

**v.**

**Frank Altmeyer, Centex Home Equity Corporation, Defendants.**

**Bankruptcy No. 99–12291 B.**
**Adversary No. 99–1205 B.**

United States Bankruptcy Court,
W.D. New York.

Oct. 11, 2001.

---

Penney, Maier, Wallach & Crowe, Mark S. Wallach, Esq., of counsel, Buffalo, NY, for Plaintiff/Trustee.

Thomas P. Connelly III, Esq., Tonawanda, NY, Attorney for Centex Home Equity Corporation.

CARL L. BUCKI, Bankruptcy Judge.

Standards of title examination have recognized the special problems that arise when a deed within the chain of title recites only a nominal consideration. *See, for example,* BAR ASSOCIATION OF ERIE COUNTY, STANDARDS OF TITLE EXAMINATION 5 (1997). The reason for this concern is the potential treatment of the transfer as a fraudulent conveyance, either under state law or under section 548 of the Bankruptcy Code. As illustrated by the instant case, the law of fraudulent conveyance may impact the rights not only of an immediate transferee, but of subsequent transferees and lienors as well.

Prior to September 28, 1998, Frank and Sandra Altmeyer were joint owners by the entireties of residential property at 188 West Hazeltine in the Village of Kenmore, New York. At that time, the Altmeyers were experiencing matrimonial problems, and Sandra had vacated the premises. Nonetheless, Frank applied to Centex Home Equity Corporation ("Centex") for a mortgage loan. As part of its underwriting, Centex obtained an appraisal showing the West Hazeltine property to have a value of $92,000. Based on this value, Centex issued its commitment for a mortgage in the amount of $73,600. To handle the closing of the loan, Centex retained U.S. Property and Appraisal Service Corp., which then hired a local attorney to complete the transaction. In reviewing the title report, counsel discovered that although Centex had issued its commitment to Frank Altmeyer only, Sandra was a joint owner of the premises that were to be mortgaged. Accordingly, on the instruction of U.S. Property, the local counsel prepared a quit claim deed conveying Sandra's interest to Frank, for a stated consideration of "one and no more dollars." Upon Sandra's execution of this quit claim deed on September 28, 1998, Frank executed the mortgage to Centex for the commitment sum. With Frank's acquiescence, Centex then disbursed approximately $32,000 to discharge the pre-existing first mortgage of Ulster Savings Bank. After deducting the costs of closing, Centex remitted the remaining net proceeds to Frank Altmeyer.

At the time that she signed the quit claim deed, Sandra Altmeyer had significant liabilities and was insolvent. Less than one year later, on April 22, 1999, she filed a petition for relief under Chapter 7 of the Bankruptcy Code. The trustee then commenced this adversary proceeding both to avoid the transfer of the debtor's interest to Frank Altmeyer and to avoid the Centex mortgage to the extent of the debtor's equity in the property immediately prior to its transfer. Frank Altmeyer has defaulted in answering the complaint, and based on that default, the trustee has obtained a judgment avoiding the quit claim transfer of Sandra's interest. Centex, however, filed a timely answer. After completing discovery, the trustee filed the present motion seeking summary judgment with respect to Centex's mortgage interest. In response, Centex has cross-moved in the alternative either to dismiss the adversary proceeding or for summary judgment.

The plaintiff in this adversary proceeding has standing only as the trustee of Sandra Altmeyer. To date, Frank Altmeyer has filed no petition for relief under the Bankruptcy Code. For this reason, the trustee may assert no claim to the original interest of Frank Altmeyer, such as it may have existed prior to the transfers on September 28, 1998. Similarly, the trustee may not avoid any mortgage that impairs only that pre-existing interest of Frank Altmeyer. Rather at issue is the extent to which the Centex mortgage remains an encumbrance on the property interest which Sandra purported to convey to her husband.

To avoid Centex's lien against property in which the debtor previously had an interest, the trustee must satisfy two requirements. First, he must avoid the conveyance to the debtor's immediate transferee. Second, the trustee must establish a right to extend that avoidance to Centex as a mediate transferee, pursuant to the provisions of 11 U.S.C. § 550. Although the trustee has already secured a judgment by default against Frank Altmeyer, that judgment is not binding on Centex. Accordingly, Centex may properly challenge the occurrence of any fraudulent conveyance to Frank Altmeyer, as well as the trustee's power to attack any interest that Centex may have acquired from Frank Altmeyer.

In the first cause of action of his complaint, the Chapter 7 trustee asserts that the debtor's transfer of her real property was a fraudulent conveyance under each of the alternative grounds stated in section 548 of the Bankruptcy Code.[1] On this motion for summary judgment, however, the trustee relies on subdivision (a)(1)(B)(ii)(I).

In relevant part, section 548(a)(1) states as follows:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.....

By quit claim deed, Sandra Altmeyer conveyed to her husband all of her interest in the West Hazeltine property on September 28, 1998, a date within one year of the filing of her bankruptcy petition. At the time, Sandra Altmeyer was insolvent. Thus, with respect to the cited provision of section 548, the only remaining issue of fact is whether Sandra received a reasonably equivalent value in exchange for the transfer. At the time of transfer, the property had an approximate value of $92,000, and was subject to a mortgage of only $32,000. The trustee contends that the stated consideration of "one and no more dollars" was not reasonably equivalent to her half interest in equity of approximately $60,000. Centex responds that the consideration should also include any joint debts that Frank may have paid, as well as monies that Sandra might have owed to her husband. Indeed, from the mortgage proceeds, Frank Altmeyer satisfied three unsecured joint obligations in the respective amounts of $2,068, $7,483, and $6,701, in addition to the outstanding

---

1. Similar to section 548 are the provisions of Article 10 of the New York Debtor and Creditor Law. Although section 544 of the Bankruptcy Code allows the trustee to assert rights under the Debtor and Creditor Law, the present complaint includes no request for relief under that statute.

first mortgage. Centex argues also that Mr. Altmeyer had previously advanced large sums of money to his wife for the purchase of a business, and that these sums should be treated as consideration for her interest in the real property.

In evaluating the fraudulent character of a conveyance, courts will not deconstruct the entire financial relationship between transferor and transferee. Rather, issue is limited to the adequacy of consideration for the particular transaction. Coincidental payments are no substitute for consideration actually attributable to the transfer. Such was the rule followed in *Wood v. Hunt*, 38 Barb. 302 (1862). In that case, the executrix of a judgment creditor sought to avoid a conveyance from the judgment debtor to his son. On an appeal from a decision of the trial court, the General Term of New York Supreme Court ruled that in the absence of fair consideration for the transfer itself, the conveyance would be deemed fraudulent:

> "Where a party receives a conveyance of land or other property from an insolvent, without actually paying, securing or becoming bound to pay any consideration therefor, no further proof of knowledge or notice of the fraudulent intent of the grantor against his creditors, is necessary in order to charge the grantee with complicity in the fraud. The subsequent voluntary payment by the grantee of valid debts existing against the grantor, or the purchase of obligations against him, or even the payment of some money, subsequently, to the grantor, will not create a presumption in favor of the good faith of the grantee, or sustain the validity of the conveyance. Nor does the grantee, by such evidence alone, present a case which entitles him to demand, as a condition to the granting of relief to the creditors of such a grantor, by adjudg-

> ing it void and directing a sale of the premises, and the satisfaction of a judgment creditor from the proceeds of the sale, that any provision should be made for the indemnity of the grantee for sums which he has voluntarily paid to parties having demands against the grantor. The complicity of the grantee in the fraud of the grantor deprives him of any right to relief in respect to such payments, from a court of equity."

38 Barb. at 309.

In the present instance, the deed from Sandra Altmeyer recites a consideration of "one and no more dollars." Additionally, as required by New York law, both Frank and Sandra signed a Real Property Transfer Report (Form RP—5217), which was filed with the county clerk when the deed was recorded. Indicating a full sale price of one dollar, this report included the Altmeyers' certification "that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments." Thus, by his own acknowledgment, Frank Altmeyer paid a nominal consideration of only one dollar. It is this consideration whose adequacy must be weighed against the unencumbered equity of the property as of the moment of transfer. Of no relevance is the subsequent but voluntary use of loan proceeds to satisfy unsecured joint obligations. Nor did Sandra deliver the deed in satisfaction of any stated obligation to her husband. Frank may have previously loaned funds to his wife, but that fact alone does not speak to the consideration for the property at 188 West Hazeltine. That consideration being only one dollar, the conveyance to Frank Alt-

meyer was a fraudulent conveyance under 11 U.S.C. § 548(a)(B).

■ Having resolved that the deed from the debtor to her husband was a fraudulent conveyance, this court must now consider the validity of rights derived from the husband after the date of the avoided transaction. Thus implicated is section 550 of the Bankruptcy Code. Subdivision (a) of this section establishes the general rule, that to the extent that a transfer is avoided, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." Here, Centex received its mortgage from Frank Altmeyer, the initial transferee. Accordingly, pursuant to section 550, the trustee now proposes to recover the value of the encumbrance, by avoiding its lien to the extent of the debtor's previous interest in the property. The rights of a trustee under section 550(a), however, are subject to the limitations of section 550(b), which provides as follows:

> The trustee may not recover under section (a)(2) of this section from—(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee.

The essence of Centex's argument is that in taking its mortgage, it gave to Frank Altmeyer full value, in good faith, and without knowledge of the voidability of the deed from Sandra Altmeyer. Having fully disbursed the proceeds of the note secured by the mortgage, Centex gave full value for its lien. In the context of customary title practices, however, Centex did not act in good faith, but with knowledge of the voidability of the earlier transfer.

■■ Although the Bankruptcy Code is a federal statute that looks for application of federal standards, the federal standard of good faith contemplates compliance with such requirements of reasonableness as are applicable to transactions outside bankruptcy. In the realm of real estate, we must look to state law and state title practice in determining the good faith of the parties to a mortgage instrument.

The due and proper recording of Centex's mortgage is not determinative of its good faith. As stated by the Court of Appeals in *Williamson v. Brown*, 15 N.Y. 354, 358 (1857), there is "no foundation in reason for a distinction between the evidence requisite to establish a want of good faith, in a case arising under the recording act, and in any other case." Rather, in real estate transactions, transferees have a duty of inquiry. Thus, the court concluded: "that where a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a *bona fide* purchaser." 15 N.Y. at 362.

Long standing precedents of the New York State Court of Appeals have affirmed the duty to inquire and to investigate potentially meritorious issues affecting title. For example, in *Ellis v. Horrman*, 90 N.Y. 466 (1882), a mortgagee had notice of facts indicating the existence of an earlier but unrecorded mortgage. In recognizing the priority of that earlier lien, the court reasoned: "Notice of any fact calculated to put the party on inquiry is, in the absence

of explanation by him, sufficient to charge him with notice of all instruments which an inquiry would have disclosed." *Id.* at 475. Upon failing to make such inquiry, an interested party "must be held to have had notice of the facts which it would have disclosed had it been made." *Id.* Adopting an identical standard was the opinion in *Cambridge Valley Bank v. Delano*, 48 N.Y. 326 (1872): "The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title, which would be discovered by an examination of the deeds or other muniment of title of his vendor, and of every fact, as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted." *Id.* at 336.

Twice in dicta, the Court of Appeals has recognized the same duty to inquire from facts indicating the possibility of a fraudulent conveyance. In *Stearns v. Gage*, 79 N.Y. 102 (1879), Justice Miller held that "[t]he principles which govern and control the doctrine of constructive notice as to fraud" are those stated in *Williamson v. Brown*, namely "that when a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made inquiry and ascertained the extent of such prior right, or to have been guilty of a degree of negligence fatal to the claim to be considered a *bona fide* purchaser." 79 N.Y. at 106–107. Later again in the context of an allegedly fraudulent conveyance, Justice Grey observed that "[t]he rule, as it was early laid down in the case of *Williamson v. Brown*, 15 N.Y. 354, has not been departed from in any subsequent case of which I am aware." *Anderson v. Blood*, 152 N.Y. 285, 293, 46 N.E. 493 (1897).

In the present instance, the deed from Sandra Altmeyer explicitly recited a price of "one and no more dollars." With insolvency, such absence of consideration is one of two pivotal requirements for avoidance of a transfer as a fraudulent conveyance. *Sabatino v. Cannizzaro*, 243 A.D. 20, 22, 275 N.Y.S. 677 (1st Dept., 1934). Further, as a statement of record within the chain of title, this recitation gives notice of an obligation to inquire about the other requisites for lien avoidance. Centex offers not even a suggestion that it made inquiry about any of these conditions, especially the insolvency of Sandra Altmeyer. Thus, Centex presents no issue of fact relative to the duty of good faith to inquire about outcomes that are necessarily suggested by a recitation of only nominal consideration. Without such good faith, Centex is unable to establish a necessary element of the defense of 11 U.S.C. § 550(b)(1).

Both in *Williamson v. Brown*, 15 N.Y. at 357, and in *Ellis v. Horrman*, 90 N.Y. at 473–474, the Court of Appeals cited with approval the decision of the Court of Exchequer Chamber in *Whitebread v. Jordan*, 1 You. & Coll. Exch. 303 (Ex. Ch. 1836). In this latter case, a London brewer brought suit to enforce an equitable lien and to establish priority as against a recorded mortgage on real property used as a tavern. The common practice among brewers at the time was to loan money to customers upon a deposit of their title deeds. The holder of the recorded mortgage knew this custom and had notice of the tavern owner's outstanding obligation to the brewer. Baron Alderson held that this notice was sufficient to impose a duty to inquire about a possible deposit of title deeds, and that the failure to so inquire was evidence of bad faith. Thus, custom and practice may establish a basis and reason for further investigation. Like customs among London's brewers, real estate title practices may create a standard that

counsel and clients may disregard only at their peril.

Although this court would find that New York precedent imposes a requirement of inquiry regarding real estate transactions for nominal consideration, a further duty of investigation is compelled by local custom and practice. In the present instance, the subject property is located in the County of Erie in New York State. Since 1949, the Bar Association of Erie County has issued Standards of Title Examination. As most recently amended in 1996, these standards define the applicable custom and practice for transactions affecting real estate. Standard 11 addresses the concern for nominal consideration within a deed:

> Objection shall not be made on the sole basis that the recital of consideration in a deed states a nominal consideration, provided: A. Ten (10) years have elapsed since the recording of such deed; or B. Subsequent to the recording of such deed, the grantor fiduciary's account has been judicially settled; or C. The Deed confirms title already acquired by will or operation of law.

BAR ASSOCIATION OF ERIE COUNTY, STANDARDS OF TITLE EXAMINATION 5 (1997). Generally, therefore, for transactions within Erie County, a title objection arises from nominal consideration for any deed within ten years. Remarkably, this time frame reaches beyond the one year period during which any transaction remains subject to subsequent attack as a fraudulent conveyance under section 548 of the Bankruptcy Code, and even the six year period for review as a fraudulent conveyance under the New York Debtor & Creditor Law, as made applicable to bankruptcy cases by 11 U.S.C. § 544.

The New York State Court of Appeals has acknowledged that a deed's nominal consideration provides the basis for a title objection, such as to be the proper subject of an action to quiet title. *Smith v. Reid,* 134 N.Y. 568, 578, 31 N.E. 1082 (1892). Until this objection is cleared or addressed, a transferee will be unable to satisfy the good faith requirement of 11 U.S.C. § 550(b).

The holding of this court comports also with a recent decision of my esteemed colleague, the Honorable John C. Ninfo, II, in *In re Hickey,* 168 B.R. 840 (Bankr. W.D.N.Y.1994). In that case, section 548 of the Bankruptcy Code had no application, because the challenged transfer occurred more than one year prior to the date of bankruptcy filing. Instead, the trustee based his complaint on section 544, which allows a trustee to avoid transfers that a creditor could avoid under state law. Thus, the trustee was able to apply the fraudulent conveyance provisions of the New York Debtor and Creditor Law, which allows avoidance of covered transfers during the previous six years. As with transactions avoidable under section 548, transfers avoidable under section 544 may be recovered from subsequent transferees pursuant to section 550 of the Bankruptcy Code. Thus, Judge Ninfo similarly considered the exception of section 550(b), for transfers in good faith. I agree fully with his conclusion:

> [I]n real estate transactions in New York State where abstracts of title are still reviewed in connection with the transactions and when the abstract sets forth a transfer of a valuable asset between a husband and wife for no consideration within the six year statute of limitations applicable to Article 10 of the New York Debtor and Creditor Law, to obtain the shelter of Section 550(b)(1) of the Bankruptcy Code, a party must make a reasonable inquiry into the solvency of the transferor at the time of the transfer.

168 B.R. at 849. Having made no such inquiry, Centex is similarly denied the safe harbor of section 550(b)(1). Accordingly, the trustee may avoid its mortgage, to the extent of the interest transferred by Sandra Altmeyer to her husband.

■ Apart from the issue of good faith is the question of knowledge of the voidability of a transfer. With regard to an examination of title, the knowledge of an attorney is fully attributable to the clients of that attorney. *Taft v. Wright,* 47 How. Pr. 1 (Sup.Ct., Second District, General Term 1873), *Farr v. Newman,* 14 N.Y.2d 183, 189, 250 N.Y.S.2d 272, 199 N.E.2d 369 (1964). In the present instance, Centex's own closing attorney prepared the deed which conveyed title for a consideration of "one and no more dollars." Counsel undoubtedly recognized that such absence of consideration was indicative of a fraudulent conveyance. Nonetheless, he failed to address that concern as a matter of record. By accepting or insuring such risk, Centex became bound to the knowledge of a potential basis for the avoidance of Frank Altmeyer's newly acquired interest.

Nominal consideration may be indicative of fraud, but it is not determinative. If made by a solvent transferor, a conveyance without consideration may nonetheless retain its legitimacy. Prospective mortgagees are asked not to avoid all lending to those who acquire title for nominal consideration, but only to make prior inquiry about its fraudulent character. For example, Centex could have demonstrated its good faith through reliance on an appropriate affidavit confirming that Sandra Altmeyer was solvent, that her remaining assets represented a reasonably adequate capital for any anticipated transactions or business, that she did not anticipate incurring debts beyond her ability to pay, and that she had no intent to hinder, delay, or defraud any entity to which she was or would become indebted. The recording of such an affidavit would further have protected the interests of other, more remote transferees. Without inquiry sufficient to secure such proof, however, Centex is unable either to demonstrate good faith or to negate a suggestion of knowledge of the voidability of the transfer.

■ Centex objects that the Equal Credit Opportunity Act (15 U.S.C. § 1691) prohibits inquiry about the financial status of a non-applicant spouse. Although the defendant cites no particular provision of the statute, the court presumes that its concern is for the regulations which generally prohibit a creditor from requesting information about the spouse or former spouse of an applicant. *See* 12 C.F.R. § 202.5. In the present instance, however, the required inquiry is for information that is relevant not by reason of a spousal relationship, but by reason of Sandra Altmeyer's status as a transferor. Seeing no discrimination as against either Frank or Sandra in their status as spouse, this court discerns no violation of the Equal Credit Opportunity Act. Additionally, the regulations serve only "to carry out the purposes" of the statute. 15 U.S.C. § 1691b(a)(1). Controlling are the provisions of 15 U.S.C. § 1691d, which recites various exceptions to the statute's application. Part (b) of this section states that "[c]onsideration or application of State property laws directly or indirectly affecting creditworthiness shall not constitute discrimination for purposes of this subchapter." It is the real property law of New York which requires, as a condition of good faith, that a transferee inquire about the solvency of the transferor in a conveyance for nominal consideration. Absent such inquiry, a lender is unable to confirm the validity of the lien that provides the foundation of the borrower's creditworthiness. This court is satisfied, therefore,

that nothing in the Equal Credit Opportunity Act precludes such inquiry as is required under New York law to assure the validity of a real property lien. Similarly, the Equal Credit Opportunity Act can not negate the consequences of Centex's failure to inquire about the solvency of Sandra Altmeyer.

The Court has considered all of Centex's other arguments, and finds them to be without merit. For all of the reasons stated herein, this court concludes that the conveyance from Sandra Altmeyer to her husband was fraudulent, and that therefore, the trustee may properly avoid that initial transfer. Unable to show that it acquired its mortgage in good faith and without knowledge of the avoidability of the deed from Sandra Altmeyer, Centex may not claim the protection of 11 U.S.C. § 550(b). Accordingly, the trustee may also avoid the mediate transfer to Centex, to the extent of Sandra Altmeyer's equity in the property at the time of its transfer. Of course, nothing in this decision can impair Centex's mortgage in so far as it encumbers the original half interest of Frank Altmeyer. Upon liquidation[2], the entire proceeds of the property will be charged with the amount of Centex's payment on the pre-existing first mortgage to Ulster Savings Bank. One-half of the net balance will be deemed an asset of the bankruptcy estate, without encumbrance of any further portion of the Centex lien. The other half of the net balance represents the pre-existing interest of Frank Altmeyer and is subject to the Centex mortgage. Based on the foregoing, this court will grant the trustee's motion for summary judgment avoiding the lien of Centex to the extent that it impairs the

equity that Sandra Altmeyer purported to convey by her deed of September 28, 1998. In all respects, the cross motion of Centex is denied.

So ordered.

**2.** The trustee's complaint does not include a cause of action, such as one based on 11 U.S.C. § 363(h), to compel a sale of the property. The process of sale must, therefore, await either the agreement of all parties having an interest in the property, or further proceedings before this court.