In re SHAPE, INC., Debtor.

SHAPE, INC., Plaintiff,

v.

MIDWEST ENGINEERING, INC., Defendant.

Bankruptcy No. 88–20388.
Adv. No. 92–2048.

United States Bankruptcy Court,
D. Maine.

Dec. 9, 1994.

Giselle Nadeau, Peter Culley, Pierce Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for debtor/plaintiff.

James Wholly, Gross, Minsky, Mogul & Singal, Bangor, ME, for defendant.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

Shape, Inc. ("Shape") alleges that a transfer of stock should be avoided as fraudulent under the constructive fraud provisions of 11 U.S.C. § 548(a)(2) and Maine law—14 M.R.S.A. § 3575(1)(B). This Court agrees and the transfer is avoided pursuant to Section 548 and the defendant Midwest Engineering Inc. ("MEI") is ordered to pay Shape $1,444,744.41 plus interest assessed from the date this adversary proceeding was commenced: March 23, 1992.

## I. BACKGROUND

On October 31, 1988, Shape transferred 60% of MEI's stock to MEI. On November 7, 1988, seven days later, Shape filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. On March 23, 1992, the Trustee timely[1] filed this adversary proceeding in order to avoid the stock transfer as fraudulent pursuant to 11 U.S.C. § 548(a). The complaint alleged that the transfer of the stock was made with actual fraud or was made for less than reasonably equivalent value (constructive fraud).

By order of the Court dated June 30, 1992, the Trustee's complaint for actual fraud was dismissed without prejudice to the extent that it sought relief under 11 U.S.C. § 548(a)(1), due to the Trustee's failure to plead that cause of action with sufficient particularity as required by F.R.C.P. 9(b). On July 20, 1993, Shape was substituted for the Trustee as plaintiff.[2] On April 1, 1994, Shape amended its complaint and alleged that the transfer of the stock was a constructive fraud under Maine law: 14 M.R.S.A. § 3575(1)(B).

After a hearing, this Court finds the following facts:

## II. FINDINGS OF FACT

1. Shape transferred (the "Transfer") all of the stock (the "Stock") it owned in MEI to MEI on October 31, 1988. This Transfer constituted 60% of the MEI stock outstanding at the time. (Stipulation of the parties)

2. Shape filed for protection under Chapter 11 of the Bankruptcy Code on November 7, 1988. (Stipulation of the parties)

3. The transfer of an interest in Shape in property occurred within one year before the date of the filing of the bankruptcy petition. (Stipulation of the parties)

4. Shape was insolvent on the date of the Transfer. This fact is a finding by the Court based upon the testimony of Jeffrey Greene who had personal knowledge and was qualified to testify as an expert witness. (Trial Transcript, August 3, 1994, Testimony of Jeffrey Greene, pp. 142–145).

5. On the date of the Transfer, the value of the Stock was § 1,514,744.41. (Plaintiff's Exhibit 24, paragraph 4; Trial Transcript, August 3, 1994, Testimony of Jeffrey Greene, pp. 95–144).

6. Shape received the following consideration from MEI for the Stock:

—$20,000. (Trial Transcript, August 3, 1994, Testimony of Jeffrey Greene, p. 131)

—A promissory note in the amount of $172,263, of which only $50,000 consisted of new consideration. (Trial Transcript, August 3, 1994, Testimony of Jeffrey Greene, pp. 127–131)

7. The payment by MEI of its debt to the Bank of New England was of no benefit to Shape since Shape was not obligated for the debt. (Trial Transcript, August 3, 1994, Testimony of Jeffrey Greene, pp. 126–131; Plaintiff's Exhibit 1, Document 14; Exhibit 5)

8. The agreement under which Shape agreed to buy from MEI shutters, hubs and inserts, was consideration that was *de minimus* to Shape. (Trial Transcript, August 3, 1994, Testimony of James Gill, pp. 49–56; Plaintiff's Exhibit 1, Document 9)

---

1. By two agreements of the parties, the applicable two-year statute of limitations provided in Section 546(a)(1) was extended to March 23, 1992, the date the complaint was filed.

2. The confirmed plan of reorganization gave Shape the power to litigate a Section 548 avoidance action.

9. The agreement by MEI not to refile claims previously asserted by MEI against Shape in the United States District Court for the District of Minnesota, was of no value to Shape as consideration for the Transfer. (Trial Transcript, August 3, 1994, Testimony of Karl Cambronne, pp. 70–80)

10. This Court is satisfied that the consideration received by Shape from MEI for the Stock did not constitute reasonably equivalent value under 11 U.S.C. § 548(a).

11. The deficiency in consideration paid by MEI for the Stock was $1,444,744.41. This figure represents $1,514,744.41 (the value of the Stock) minus the $70,000 ($20,-000 in cash plus $50,000 of the promissory note) that Shape received as consideration.

## III. ANALYSIS

■ Shape contends that the Transfer should be set aside as fraudulent. The constructive fraud provisions of Section 548(a)(2) of the Bankruptcy Code, permit a transfer to be avoided if the trustee (or in a Chapter 11 case the debtor in possession) can establish (1) that the debtor had an interest in the property (2) that a transfer of that interest occurred within one year of the date of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received less than reasonably equivalent value for such transfer. 11 U.S.C. § 548(a)(2); *BFP v. Resolution Trust Corp.*, —— U.S. ——, ——, 114 S.Ct. 1757, 1760, 128 L.Ed.2d 556 (1994). As discussed above, Shape proved these elements and the Transfer of the Stock is hereby avoided.

■ To the extent that a transfer is avoided under Section 548, a trustee or debtor in possession may recover for the estate "the property transferred, or if the court so orders, the value of such property ..." 11 U.S.C. § 550(a). "Section 550(a) expresses a congressional intent that a transferee should return the property transferred unless to do so would be inequitable, in which case he must pay the property's value." *In re General Industries, Inc.*, 79 B.R. 124, 135 (Bankr.D.Mass.1987). In the instant case, on the date of the Transfer, the Stock was worth $1,514,744.41. Since that date, the Stock has greatly diminished in value and it would be inequitable, and of little benefit to Shape, for Shape to receive the Stock. Therefore, in addition to the $20,000 in cash, and $50,000 in new consideration received by Shape as part of the promissory note, MEI is ordered to pay to Shape $1,444,744.41. This amount is the difference between the value of the Stock ($1,514,744.41) on the date of the Transfer and the consideration received by Shape ($70,000).

■ In addition, in a Section 548 action, this Court has the discretion to award pre-judgment interest. *Federal Deposit Insurance Corp. v. Rocket Oil Co.*, 865 F.2d 1158, 1160 (10th Cir.1990); *In re Investment Bankers, Inc.*, 161 B.R. 507, 509 (D.Colo. 1992); *In re Universal Clearing House Co.*, 62 B.R. 118, 129–30 (D.Utah 1986); *In re Southern Indus. Banking Corp.*, 87 B.R. 518, 521 (Bankr.E.D.Tenn.1989). An award of pre-judgment interest is intended not to be punitive, but rather to compensate "the wronged person for deprivation of the monetary value of the loss from the time of the loss to the payment of the monetary judgment." *Southern Indus. Banking Corp.*, 87 B.R. at 521, *quoting Turner v. Japan Lines Ltd.*, 702 F.2d 752 (9th Cir.1983). As a result, Shape is awarded interest that is assessed from the date this adversary proceeding was commenced.[3] *Robinson v. Watts Detective Agency Inc.*, 685 F.2d 729, 741–42 (1st Cir.1982); *Universal Clearing House*, 62 B.R. at 130.[4]

---

3. 28 U.S.C. § 1961(b) fixes the rate of post-judgment interest. Most courts awarding pre-judgment interest use this rate. *In re Southern Indus. Banking Corp.*, 87 B.R. 518, 523 (Bankr. E.D.Tenn.1988).

4. In Count II of its complaint, Shape seeks to avoid the Transfer as fraudulent under Maine law: 14 M.R.S.A. § 3575(1)(B). Because this Court holds that the Transfer is fraudulent under Section 548(a)(2), it is not necessary for this Court to rule on this state law action. However, this Court does note that the elements of 14 M.R.S.A. § 3575(1)(B) are the same as the elements of 11 U.S.C. § 548(a)(2), and, under Maine law, 14 M.R.S.A. § 1602(1)(B), the awarding of pre-judgment interest is mandatory and is

**4**

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052.

---

assessed from the date the notice of claim was served on the defendant.