**In re ALL AMERICAN PETROLEUM CORP., Debtor.**

**Neil Ackerman, Chapter 7 Trustee of the Estate of all American Petroleum Corp., Plaintiff,**

**v.**

**Ivan Kovac, I. Kovac Consulting Corp., Rad Energy Corp. f/k/a Rad Oil Co., Inc., all American Fuel, A Division of Rad E Energy Corp., and Stephen S. Draizin, Defendants.**

**No. 896–83672–478.**
**Adversary No. 898–8348–478.**

**United States Bankruptcy Court, E.D. New York.**

**Jan. 31, 2001.**

Zeichner, Ellman & Krause LLP, By Peter Janovsky, New York, Special Counsel to the Chapter 7 Trustee.

Nicholas J. Damadeo, Smithtown, for Defendant Mineola Fuel Ltd.

Howard B. Arber, Hempstead, for Defendants Ivan Kovac and I. Kovac Consulting Corp.

Carl S. Levine & Associates, P.C., By Alexander M. Amanatides, Roslyn, for Defendant RAD Energy Corp. f/k/a RAD Oil Co., Inc.

Mr. Ivan Kovac, Fort Lauderdale, FL, Defendant Pro Se.

## DECISION AND ORDER

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court are two related adversary proceedings brought by the Chapter 7 Trustee (the "Trustee" or "Plaintiff") of All–American Petroleum Corp. (the "Debtor"), seeking, among other things, to avoid as fraudulent conveyances, pursuant to 11 U.S.C. §§ 544(b) and 550 and New York Debtor and Creditor Law ("DCL"), §§ 273, 274, and 275 and 276 certain prepetition transfers of property of the Debtor to third parties and recover for the benefit of the estate the value thereof, plus interest from the date of the transfers, from the initial transferees, any immediate or mediate transferee of such initial transferees and/or the entity for whose benefit such transfers were made. The adversary proceeding against Ivan Kovac, I. Kovac Consulting Corp., Mineola Fuel, Ltd., Donald LeoGrande and the United States of America has already been decided.

In this action, which is entitled *Ackerman v. Ivan Kovac, Ivan Kovac Consulting Corp., RAD Energy Corp. f/k/a RAD Oil Co., Inc., All American Fuel, a Division of RAD Energy Corp., and Stephen S. Draizin,* Adv. Pro. No. 898–8348–478 (hereinafter the "RAD Action"), the Trustee is seeking to set aside an agreement between RAD and the Kovac defendants transferring a Commercial List owned by the Debtor and to recover the value of the Commercial List of customers (as more fully described *infra* ), plus all profits realized by Defendants from the date of the transfer, which the Trustee maintains was the property of the Debtor's estate at the time it was transferred and for which the Debtor received no consideration. The

Trustee has additional claims against all Defendants for conversion, the imposition of a constructive trust and for the recovery of $24,599.15 in payments made by the Debtor to RAD during the period July 1, 1994 and December 1, 1994 (the "RAD Payments") for which the Debtor received no consideration.

In this action, the Court is called upon to determine the Trustee's Motion for Summary Judgment (the "Trustee's RAD Motion") on the causes of action brought pursuant to 11 U.S.C. §§ 544(b) and 550 and DCL § 273, 274, 275 and 276, which is opposed by Ivan Kovac ("Kovac") and Ivan Kovac Consulting Corp. ("IKCC"), Kovac and IKCC referred to collectively as the "Kovac Defendants," as well as by RAD Energy Corp. ("RAD"), All American Fuel, a Division of RAD Energy Corp. ("AAF") and Stephen S. Draizin ("Draizin"), RAD, AAF and Draizin referred to collectively as the "RAD Defendants." In connection therewith, the Trustee also seeks interest and attorneys' fees, which are awarded pursuant to DCL § 276–a when a plaintiff establishes actual intent to defraud. Additionally, the RAD Defendants have filed a Cross–Motion for Summary Judgment (the "RAD Cross–Motion") on the Trustee's claims for conversion and the imposition of a constructive trust. The RAD Cross–Motion also seeks dismissal of the complaint as against defendant Draizin.

After consideration of the record made at the hearing held April 18, 2000 and all of the pleadings, affidavits, supporting documentation and memoranda of law filed in connection with the Trustee's RAD Motion, the RAD Cross–Motion and the Trustee's Statement of Undisputed Facts Pursuant to LBR 7056–1 filed in connection with the Trustee's Motion, and the Statement Pursuant to LBR 7056–1 filed by the RAD Defendants, the Court has determined that there is no issue of material fact which requires a trial as to the transfer of Debtor's property to RAD. Therefore, the Court grants the Trustee's Motion for all relief requested as against the Kovac Defendants, except for conversion. As to RAD and AAF, Trustee's motion is granted with respect to the fraudulent conveyance claims, but denied as to its claim for conversion, constructive trust and attorney's fees. The Court further grants the RAD Cross–Motion dismissing the Trustee's claims for conversion and the imposition of a constructive trust as to RAD and dismisses all claims against Draizin, individually. This decision constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52, as made applicable to adversary proceedings by Fed. R. Bankr.P. 7052.

### ISSUES PRESENTED

1. Whether there are any genuine issues of fact for trial in the RAD action.

2. Whether the "Commercial List" was at all times property of the Debtor's estate.

3. Whether the record before the Court shows that the pre-petition transfer(s) of the Commercial List to IKCC and RAD and/or AAF were fraudulent conveyances avoidable by the Trustee.

4. Whether the Trustee can recover the value of the Commercial List from the Kovac Defendants and/or the RAD Defendants for the benefit of the estate.

5. Whether there existed a constructive trust of Debtor's assets.

6. Whether the Trustee is entitled to recover from the Kovac Defendants and/or the RAD Defendants prejudgment interest from the date of the RAD Transfer, as well as attorneys' fees and costs.

### FACTS

1. On June 6, 1997 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Neil Ackerman was subsequently appointed the Chapter 7 Trustee.

2. The Debtor was incorporated in or about 1986 by Kovac and began operating as a distributor of petroleum products in 1987. Kovac is the sole shareholder and President of the Debtor and incorporated the Debtor to protect himself from personal liability. Kovac is also the sole shareholder and President of defendant IKCC, which was formed by Kovac on April 8, 1993, approximately two weeks after the transfer of the "Commercial List" (as defined *infra*) to RAD.

3. Prior to forming the Debtor, Kovac was an employee of General Oil Co. ("General Oil"). While employed at General Oil, Kovac had accumulated through his contacts in the petroleum industry a list of residential and commercial customers for heating oil.

4. Following its incorporation and prior to the Filing Date, the Debtor sold oil to former wholesale, commercial and governmental customers (the "Commercial Customers") and serviced these customers. The list of Commercial Customers supplied and serviced by the Debtor shall be referred to herein as the "Commercial List."

5. In addition, at or about the same time that the Debtor was incorporated, Kovac arranged for the sale of home heating oil and service to residential customers (the "Residential Customers").

6. At all times, all purchases of oil and other products for sale and service to Debtor's creditors were purchased by and billed to the Debtor. There are no sales of oil to I. Kovac or IKCC which could have been used as sales by them to any of the customers of these lists.

7. In or about September 1988, Kovac completed and signed a personal financial statement (the "Kovac 1988 Financial Statement"). The Kovac 1988 Financial Statement did not list either the Commercial List or the Residential List as personal assets of Kovac.

8. In 1992, the Debtor obtained financing from Ambassador Factors, which lent the Debtor seventy-five (75%) percent on every account receivable derived from the Debtor's Commercial List and the Residential List. Moreover, the corporate financial statements of the Debtor prepared in 1992 for the purpose of obtaining such financing listed the Residential and Commercial Accounts as assets of the Debtor, with Kovac's acquiescence and participation. In 1992, both Kovac and the Debtor represented to the Debtor's creditors that the Residential Accounts and the Commercial Accounts were property of the Debtor.

9. The Commercial List and the Residential List were property of the Debtor as of 1992, at the latest, and perhaps as early as 1988. Despite Kovac's contention that the customer lists never became property of the Debtor and always remained his personal property, he acknowledged that the Debtor never paid him anything for the use thereof. Moreover, there are no documents evidencing any agreements permitting the Debtor to use the Commercial List and/or the Residential List purportedly owned by Kovac. Likewise, there is no evidence of any re-transfer of the customer lists from the Debtor to Kovac, personally, or to IKCC, nor is there any evidence of any transfer thereof from Kovac to IKCC. Since there is not a scintilla of evidence to support Kovac's claim of ownership of the customer lists, individually or through IKCC, the Court finds that the Commercial List and the Residential List were at all times assets of the Debtor, including at the time of the transfers of the Commercial List to RAD.[1]

---

1. In the first quarter of 1993, Kovac negotiated with Mineola Fuel, Ltd. ("Mineola") for the sale of the Residential List (the "Mineola Transfer"), culminating in the execution of a Purchase Agreement (the "Mineola Agreement") on April 15, 1993. In a related adversary proceeding entitled *Ackerman v. Ivan Kovac, I. Kovack Consulting Corp., Mineola Fuel, Ltd., Donald LeoGrande, and the United States of America,* Adv. Pro. No. 898–8348 (hereinafter the "Mineola Action"), the Court determined that the transfer of the Residential List,

10. Prior to July 1, 1992, the Debtor incurred more than $585,000 in unpaid New York State taxes (excluding interest and penalties), which remain unpaid to date (the "State Taxes"). In addition, prior to July 1, 1992, the Debtor incurred almost $200,000 in unpaid Federal income taxes (excluding interest and penalties) (the "Federal Taxes"). Thus, as of July 1, 1992, the Debtor owed more than $785,000 in unpaid Federal and State Taxes, plus substantial amounts of interest and penalties (the "1992 Unpaid Taxes"). As of June 30, 1993, the State Taxes had increased to $625,000 and the Federal Taxes had increased to over $200,000. Thus, as of June 30, 1993, the unpaid taxes totaled at least $825,000 (the "1993 Unpaid Taxes").

11. According to the Debtor's tax returns, as of July 1, 1992, the Debtor's assets were $1,294,867 and its liabilities were $1,323,123, resulting in a negative net worth of $29,356. However, the liabilities on the tax return include only $309,481 in tax liabilities. Thus, the tax return does not include most of the unpaid 1992 Unpaid Taxes. If the Debtor's total tax liabilities are included, as indicated in the Debtor's books and records, the Debtor's negative net worth as of July 1, 1992 was in excess of $500,000. If the unrecorded interest and penalties on the 1992 Unpaid Taxes were included, the negative net worth would increase. Accordingly, the Court finds that the Debtor was insolvent as of July 1, 1992.

12. According to the Debtor's tax returns, as of June 30, 1993, the Debtor's assets were $686,589 and its liabilities were $923,174, resulting in a negative net worth of $236,605. However, the liabilities on the tax returns included only approximately $550,000 in tax liabilities. Thus, the tax returns did not include approximately $273,000 of the 1993 Unpaid Taxes. If the Debtor's total tax liabilities are included, the Debtor's negative net worth as of June 30, 1993 was more than $500,000. If the unrecorded interest and penalties on the unpaid tax liabilities were included, the negative net worth would increase. Accordingly, the Court finds that the Debtor was insolvent as of June 30, 1993.

13. As a result of the above, the Debtor was clearly insolvent at the beginning of the tax year commencing on July 1, 1992 and at all times thereafter, including March 26, 1993, the date of the parties' agreement to transfer assets, and on May 1, 1993, the date of the RAD Transfer (as defined *infra*). In fact, Kovac has admitted that as of July 1, 1992, he did not believe that the Debtor's assets exceeded its liabilities (Kovac 1/26/99 Deposition, Tr., p. 29).

14. In March 1993, Exxon Company, U.S.A. ("Exxon") made demand on the Debtor's obligations to Exxon in the amount of $174,074.15, which were guaranteed by Kovac personally (the "Exxon Demand"). On March 31, 1993 and April 7, 1993, Exxon made further demand on Kovac's personal guaranty in the same amount. Consequently, the Court finds that Kovac was under financial pressure at the time of the transfers of the Commercial List to RAD and the Residential List to MINEOLA. Not only was Kovac under financial pressure, but the Debtor was unable to satisfy Exxon's demand for payment which caused Exxon to look to Kovac for payment. This is further supported by the fact that at Kovac's request, the Debtor's accountant was soliciting bids for Debtor's business and/or assets. He was not soliciting to sell IKCC's business or Ivan Kovac's business. He was offering Debtor's assets for sale (Trustee's RAD Motion, Exh. K).

15. RAD was founded in 1960 by Robert A. Draizin, the father of defendant Draizin. RAD, directly and through its affiliated companies, is engaged in the

which was an asset of the Debtor, to Mineola, for little or no consideration was a fraudulent conveyance pursuant to 11 U.S.C. §§ 544(b) and 550(a) and DCL §§ 273–276. See Decision and Order dated January 4, 2001.

business of purchasing, reselling, storing and transporting gasoline, heating oil, jet fuel, kerosene and other petroleum products to service stations, wholesalers, independent retailers, municipalities, utilities and commercial consumers. RAD is the largest independent wholesaler of petroleum products in the New York metropolitan area, and is familiar with its industry practices. At all relevant times, Draizin was the chief executive officer of RAD and the owner of 50% of the outstanding shares of RAD. His brother owns the remaining 50% of the outstanding shares.

16. On March 26, 1993, approximately two weeks before IKCC was incorporated, Kovac, as nominee of IKCC, entered into a joint venture agreement with RAD (the "RAD Agreement" negotiated by Draizin) that provided, *inter alia,* for the transfer by IKCC (the "RAD Transfer") of the Commercial List to RAD as of the closing of the RAD Agreement, which was specified as May 1, 1993. More specifically, the RAD Agreement provided for the transfer of the list of all commercial customers supplied or serviced by IKCC, directly or through any other entity in which IKCC or its officers, directors, or shareholders have or had an interest or relationship at any time.[2] Pursuant to the RAD Agreement, RAD retained the services of IKCC as its sales agent and caused IKCC's President, Kovac, to serve as President of AAF, a newly created division of RAD responsible for its sales to the customers appearing on the Commercial List transferred to RAD by IKCC or otherwise obtained by IKCC for AAF (¶ 2(a)). In substance, RAD would exclusively supply the petroleum

products, arrange for deliveries, dispatching, billing and the balance of the infrastructure necessary to supply the AAF customers, and IKCC would function as the sales agent (¶ 3(a)). AAF's gross profits were to be equally divided and distributed between RAD and IKCC (¶ 4(c)).[3] In the event the RAD Agreement was terminated, IKCC was to retain for its own account (i) all customers on the Commercial List transferred to AAF pursuant to the RAD Agreement; and (ii) all customers obtained by IKCC for AAF subsequent to the date of the RAD Agreement (¶ 10(b)). Thus, pursuant to the terms of the RAD Agreement, Kovac and IKCC retained a reversionary interest in the Commercial List, although Kovac used the Commercial List in connection with his sales activities for AAF.

17. The Debtor's Commercial List was never transferred by the Debtor to IKCC or Kovac and at all times was property of the Debtor.

18. It is undisputed that all of the Commercial Customers to whom the Debtor sold petroleum products were included on the Debtor's Commercial List.

19. As the customers on the Commercial List were, prior to the date of the RAD Agreement, supplied and serviced by the Debtor, an entity in which Kovac, the sole officer, director and stockholder of IKCC, had an interest, and not by IKCC itself,[4] the RAD Agreement clearly contemplated the transfer of an asset of the Debtor, not an asset of IKCC. RAD has admitted this (Tr. 4/18/00 Hrg., p. 70).

---

2. Paragraph 1(a) of the RAD Agreement provides:

(a) As of the closing of this Agreement, I.K. Consulting Corp. will *transfer* to RAD its customer list. This customer list shall consist of all accounts theretofore supplied or serviced by I.K. Consulting Corp., directly or through any other entity in which I.K. Consulting Corp. or its officers, directors or shareholders have or had an interest or relationship, at any time. I.K. Consulting Corp. shall execute all documents reason-

ably required in the judgment of RAD to effectuate the *transfer.* (emphasis supplied)

3. Gross profit, as defined in the RAD Agreement, is equal to the difference between the price charged by AAF to its customers, less the cost charged to AAF for the product; i.e., RAD's price to AAF, trucking costs and bad debt reserve.

4. IKCC did not even exist as a separate entity as of the date of execution of the RAD Agreement; it was incorporated on April 8, 1993.

RAD claims it provided consideration for the transfer. However, it may have provided some consideration to the Kovac Defendants, but it is very clear that the Debtor received no consideration for the transfer of the Commercial List to RAD.

20. Kovac, who exercised dominion and control over the Debtor, wrongfully caused the Debtor to transfer the Debtor's Commercial List to RAD for less than fair consideration. The Debtor did not receive any consideration whatsoever for the transfer; rather, Kovac and/or IKCC received one-half of the profits generated by AAF from servicing the Commercial Customers previously serviced by the Debtor since the date of the RAD Transfer.

21. Pursuant to the RAD Agreement, Kovac and IKCC have been paid more than $900,000 to date from RAD for the use of the Commercial List and the personal services of Kovac, who acts as the sales agent with respect to the customers on the list.

22. According to the Trustee's accountant, the fair market value of the Commercial List as of the date of the RAD Transfer was between $750,000 and $900,000. However, the customer list which was the subject of the RAD Transfer contained the names of governmental, wholesale and residential entities that are subject to a competitive bidding process and they may or may not be subject to the RAD Agreement or be considered the exclusive customers of any party. The facts in regard to these customers and other issues raised require a hearing to fix and determine the fair market value of Debtor's property or interest fraudulently transferred. It is clear that Kovac transferred Debtor's property to RAD for no consideration to the Debtor. Therefore only the extent of Plaintiff's damages necessitates a further hearing.

23. Draizin in his individual capacity was not a party to the RAD Agreement and was not an individual beneficiary of the income generated by RAD's use of the Commercial List.

24. RAD and Draizin deny knowledge that the Commercial List was property of the Debtor at the time of the RAD Transfer. However, the agreement between RAD and Kovac and/or IKCC indicates otherwise. The Court finds that RAD knew or should have known that the transfers were being made of property of the Debtor's estate and were not owned by IKCC or Ivan Kovac.

25. RAD did not make reasonable inquiry regarding the ownership of the Commercial List. Although there was no public record available to demonstrate the ownership of such a list, Draizin testified at deposition that he knew Kovac and that Kovac operated in the petroleum business through the Debtor (Draizin 5/11/98 Dep., Tr., pp. 42–46), but nonetheless RAD did not make any effort to ascertain whether the Commercial List was Kovac's individual property or the property of the Debtor. Moreover, RAD demonstrated that it knew that IKCC was the successor-in-interest to the business of the Debtor by including in the RAD Agreement the provision captioned "Transfer of Customer List." That provision specifically states that the customer list being transferred consists of "all accounts theretofore supplied or serviced by I.K. Consulting Corp., *directly or through any other entity in which I.K. Consulting Corp. or its officers, directors or shareholders have or had an interest or relationship,* at any time" (emphasis supplied). In essence, RAD did not make any further inquiry because it did not want to be charged with actual knowledge that IKCC did not have any right, title, or interest in the asset being transferred. This Court finds that RAD did have sufficient knowledge that it was acquiring property of the Debtor, especially since it wished to use Debtor's name (All American) in the proposed joint venture. Only the Debtor could transfer the right to use its name.

26. RAD was the initial transferee of the Commercial List and the name All American from the Debtor, as the list and

the right to use this name was at all times property of the Debtor corporation, and there was never any transfer thereof by the Debtor to either Kovac or IKCC.

27. According to Kovac, most of the Debtor's business stopped in April 1993, shortly after execution of the RAD Agreement and after the transfer of the Residential List to Mineola. It had no further business to conduct and ceased totally 8–9 months thereafter.

28. There are no genuine issues of material fact requiring a trial as to liability with respect to the Trustee's fraudulent conveyance claim against the RAD Defendants and the Kovac Defendants brought pursuant to 11 U.S.C. §§ 544(b) and 550 and DCL §§ 273–276. However, a hearing is required to determine the amount of damages and the value of the asset transferred to RAD pursuant to the RAD Agreement and as to the damages to be assessed against the Kovac defendants for their violation of a constructive trust to this Debtor's estate.

29. There are no genuine issues of material fact requiring a trial with respect to whether the RAD Defendants are entitled to summary judgment on the Trustee's claims for conversion and/or the imposition of a constructive trust. There are no genuine issues of material fact requiring a trial with respect to whether the complaint should be dismissed as to Draizin.

### DISCUSSION

Plaintiff is the appointed and acting Bankruptcy Trustee in the Debtor's Chapter 7 case. As such, Plaintiff is authorized to commence and prosecute this action for and on behalf of the Debtor's creditors and his estate under 11 U.S.C. § 323 and Fed. R. Bankr.P. 6009.

This action arises under 11 U.S.C. §§ 544 and 550, DCL §§ 270–279 inclusive, and Fed.R.Bankr.P. 7001(1), (2) and (9).

This Court has jurisdiction over this action under Sections 157(a) and 1334(b) of the Judiciary Code and the standing order of reference of the United States District Court for the Eastern District of New York.

This action is a core proceeding under Sections 157(b)(2)(A), (E) and (H) of the Judiciary Code, as it arises in and under and/or relates to the Debtor's Chapter 7 case.

There are no issues of any material fact which require a trial; therefore, summary judgment is appropriate in this case, as more fully discussed below.

### SUMMARY JUDGMENT

The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), held that summary judgment is appropriate where there are no *bona fide* issues arising from genuine facts requiring a trial. *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand a motion for summary judgment, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the disputed issues of fact "must be backed by evidence." *Denker v. Uhry*, 820 F.Supp. 722, 729 (S.D.N.Y.1992), *aff'd*, 996 F.2d 301 (2nd Cir.1993); *See also Winkel v. Reserve Officer of City of Beloit, KS.*, 773 F.Supp. 1487, 1489 (D.Kan.1991).

The overwhelming evidence unequivocally establishes that the Commercial Assets were property of the Debtor at the time of the RAD Transfer.

■ Self-serving conclusory statements by a non-moving party that dispute the clear and unequivocal documentary evidence presented by the movant are insufficient to create material issues of fact to avoid summary judgment. In order to defeat summary judgment, a disputed issue of fact "must be backed by evidence." *Denker v. Uhry*, 820 F.Supp. 722, 729 (S.D.N.Y.1992), *aff'd*, 996 F.2d 301 (2nd

Cir.1993). Here, Defendant's self serving conclusory statements are not backed by any evidence. Thus, there are no material facts requiring a trial.

■ The Debtor submitted a letter by its accountant to support its argument that it was not insolvent at the time of the Transfer. The Court finds that the unsworn letter as to Debtor's solvency has no probative value and cannot be considered in the context of the Trustee's motion for summary judgment. *See* Fed. R. Bankr.P. 7056(e), incorporating Fed.R.Civ.P. 56(e); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991) (unsworn letter cannot provide evidence to defeat summary judgment motion); *Stahl v. Wal–Mart Stores, Inc.*, 47 F.Supp.2d 783, 790 (S.D.Miss.1998) (letter is inadmissible to defeat summary judgment); *Puglise v. Cobb County, Georgia*, 4 F.Supp.2d 1172, 1177 (N.D.Ga.1998) (unsworn letter of expert in opposition to summary judgment not considered).

## APPLICABLE DEBTOR AND CREDITOR LAW

■ Section 273 of the New York Debtor and Creditor Law provides that "[e]very conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without fair consideration." [5] DCL § 273 (McKinney 1990). The transfer of the Debtor's Commercial List to RAD in May 1993 was a transfer of the Debtor's property for which the Debtor received no consideration at all—at a time when the Debtor was insolvent. The RAD Transfer is therefore avoidable pursuant to DCL § 273. *See, In re Montclair Homes,*

*Inc.*, 200 B.R. 84, 95 (Bankr.E.D.N.Y. 1996).

Similarly, the RAD Transfer is avoidable pursuant to Section 274 of the New York Debtor and Creditor Law, which provides that "[e]very conveyance made without fair consideration when the person making it is engaged ... in a business ... for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors ...." DCL § 274 (McKinney 1990). After the almost simultaneous transfers of the Residential List to Mineola and the Commercial List to RAD in the Spring of 1993 for no consideration, the Debtor was left with virtually no money or assets from these Transfers. RAD received the Debtor's Commercial List, as well as the personal services of Kovac, who continued to service the Commercial Customers previously serviced by the Debtor, and also developed potential customers set forth in the Commercial List, thereby appropriating business opportunities that belonged to the Debtor, an entity of which Kovac was the sole principal and a fiduciary. The only parties who benefitted from the transfer of the Commercial List to RAD were the Kovac Defendants and RAD, which agreed to share the profits generated by AAF's sales of petroleum products to the Debtor's former customers. Accordingly, as a result of the transfers, the Debtor was left with "an unreasonably small capital." Hence, the RAD Transfer was fraudulent as to the Debtor's creditors. Consequently, the Trustee may avoid the RAD Transfer pursuant to DCL § 274. *See In re Checkmate Stereo and Electronics, Ltd.*, 9 B.R. 585, 612 (Bankr.E.D.N.Y.1981), *aff'd*, 21 B.R. 402 (E.D.N.Y.1982).

---

5. "Fair consideration" is defined in Section 272 of the New York Debtor and Creditor Law as follows:

 Fair consideration is given for property, or obligation,

 a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

 b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not proportionately small as compared with the value of the property, or obligation obtained.

DCL § 272 (McKinney 1990).

Additionally, the RAD Transfer is avoidable pursuant to Section 275 of the New York Debtor and Creditor Law, which provides that "[e]very conveyance made ... without fair consideration when the person making the conveyance ... intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors ...." DCL § 275 (McKinney 1990). At the time of the RAD Transfer and the Mineola Transfer in the Spring of 1993, the Debtor knew that it would incur debts beyond its ability to pay as they matured. At or about the time of these transfers the Debtor was indebted to Exxon in an amount in excess of $174,074.15, which it could not pay. Further, the Debtor was aware of its inability to pay the more than $785,000 in outstanding Federal and State tax liabilities, which were continuing to accrue interest and penalties at that time. Accordingly, the Trustee may also avoid the RAD Transfer pursuant to DCL § 275. *See In re Checkmate Stereo and Electronics, Ltd.,* 9 B.R. 585, 612 (Bankr.E.D.N.Y. 1981), *aff'd,* 21 B.R. 402 (E.D.N.Y.1982).

■ Because the RAD Transfer is avoidable under DCL § 273, 274 and 275, the Trustee may utilize the provisions of the Bankruptcy Code to recover the value of the Commercial List for the benefit of the estate and its creditors. Specifically, by virtue of Section 544(b) of the Bankruptcy Code, the Trustee "may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [the Bankruptcy Code]." 11 U.S.C. § 544(b). Under the New York Debtor and Creditor law, a creditor is permitted to trace a transferor's transactions back over six years. *In re Montclair Homes, Inc.,* 200 B.R. 84, 94 (Bankr.E.D.N.Y. 1996). In this case, as at the time of the subject transfers, the Debtor was indebted to, amongst others, Exxon and to the IRS and New York State for unpaid taxes in substantial sums, which creditors could have avoided the RAD Transfer as fraudulent.

■ RAD's argument that the Trustee may not recover from RAD because it lacked knowledge of the Debtor's ownership of the Commercial List is without merit. RAD was an initial transferee of the Debtor's Commercial List and, accordingly, its knowledge is not relevant. 11 U.S.C. § 550(a)(1); *See In re Universal Clearing House Company,* 62 B.R. 118, 125 (D.Utah 1986) (the protection of subsection 550(b)(1) are expressly limited in application to subsequent transferees).

■ Moreover, and in any event, RAD has failed to establish that it was without knowledge of the avoidability of the transfer. RAD has acknowledged that:

a. Prior to the RAD Transfer, RAD believed that the Commercial List was owned by the Debtor;

b. RAD was surprised to learn that the seller would be IKCC, not the Debtor;

c. RAD wanted to buy the list of customers who were being serviced by All–American Petroleum Corp., and the right to use the Debtor's name, "All–American"; and

d. Although RAD (i) believed the Commercial List was owned by the Debtor, (ii) had never heard of IKCC and (iii) was never shown any documents indicating that Kovac and/or IKCC had any ownership interest in the Commercial List or had ever engaged in any business transactions involving customers on the Commercial List other than through the Debtor, RAD nevertheless elected to rely on Kovac's statement that the Commercial List belonged to him and IKCC and not to the Debtor.

■ "Knowledge" exists "if the transferee 'knew facts that would lead a reasonable person to believe that the property transferred was recoverable.'" *Internal Revenue Service v. Nordic Village, Inc.*

*(In re Nordic Village, Inc.)*, 915 F.2d 1049, 1055 (6th Cir.1990), *rev'd* on other grounds, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Thus:

> If a transferee possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge.

*Brown v. Third Nat'l Bank, (In re Sherman)*, 67 F.3d 1348, 1357 (8th Cir.1995). The extremely suspect circumstances of the transaction certainly provided RAD with sufficient notice to make further inquiry. RAD's decision to rely entirely on Kovac's representation that IKCC owned the Commercial List and RAD's failure to make further inquiry under the circumstances results in the Court's finding that it did have knowledge of the avoidability of the Transfer. In any event, as noted above, RAD's knowledge is not relevant.

## BADGES OF FRAUD

■ DCL § 276 provides that a transfer may be avoided if made with actual intent to hinder, delay or defraud present or future creditors. Fraudulent intent may be deduced from the facts and circumstances of a case based upon certain "badges of fraud." As set forth by the Second Circuit, these include:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transaction[s] or course of conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir.1983); *In re Silverstein*, 151 B.R. 657, 661 (Bankr. E.D.N.Y.1993).

■ Many of these factors are present with respect to the transfer by the Kovac Defendant's of the Commercial List. The evidence clearly shows that at the time of the Transfer:

a. The Debtor received no consideration for the transfer of the Commercial List;

b. Kovac and IKCC, insiders of the Debtor, received the funds paid for the Transfer;

c. the Debtor was insolvent and unable to continue in business;

d. the Debtor was faced with enormous tax liabilities and a potential IRS levy;

e. the Debtor's creditors were pressuring the Debtor on its payables;

f. Kovac had actively been marketing the Debtor's business to numerous entities; and

g. Kovac defrauded the creditors of this estate by taking the assets of the Debtor, selling them, and arranging to receive the proceeds personally, which actually belonged to the Debtor's estate.

Kovac admits that the Debtor's business had been declining since 1991 and that it went completely out of business less than a year after the transfer of the Residential and Commercial Lists. Further, the transfer of the Commercial List in March, 1993, followed by the transfer of the Residential List in April, 1993, shows a pattern or course of conduct by Kovac to transfer assets of the Debtor to other parties at a time when the Debtor was undergoing great financial difficulties (including more than $785,000 in tax liabilities) and was virtually out of business.

Similarly, the chronology of the events and transactions shows an intent by Kovac to defraud: First, the Debtor's business declined. Then, Kovac transferred the Residential List and the Commercial List through sales by IKCC—an entity that was not even incorporated at the time of the RAD Transfer. Finally, Kovac continued in business servicing the Debtor's former customers as All American Fuel in a joint venture with RAD, with no consideration passing to the Debtor.

An additional badge of fraud is evident in Kovac's attempt to claim that the Residential and Commercial Lists are his own property and never became property of the estate, despite the Debtor's complete dependence on the Lists for its business. His explanation for this defies credibility—there was never any agreement or payment by the Debtor for its use of Kovac's purported personal Lists, nor was there any agreement or payment with respect to the alleged transfer of the Lists from Kovac to IKCC. Moreover, commencing in 1992, in order to obtain credit, the Debtor formally represented to its creditors that the Residential List and the Commercial List were the Debtor's assets. Neither Kovac or IKCC purchased any fuel for sale to others. Only the Debtor purchased the fuel and supplied its services to the customers at issue.

### THE TRUSTEE IS ENTITLED TO RECOVER ATTORNEYS' FEES AND EXPENSES FROM THE KOVAC DEFENDANTS ONLY

Section 276–a of the New York Debtor and Creditor Law provides:

In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside the conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgement, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, receiver, trustee in bankruptcy or assignee for the benefit of creditors in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgement. The fee so fixed shall be without prejudice to any agreements, express or implied, between the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and his attorney with respect to the compensation of such attorney.

DCL § 276–a (McKinney 1990).

*Actual Intent is a Prerequisite to an Award of Attorneys' Fees in a Fraudulent Conveyance Action*

Under New York law, an award of attorneys' fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual intent on the part of the defendant. *In re Stephen Douglas, Ltd.,* 174 B.R. 16 (Bankr. E.D.N.Y.1994). In *Douglas,* the court held that the trustee was entitled to set aside the transfer because the transferees failed to prove that the Debtor received fair consideration for the transfer in question. However, the court found that the trustee was not entitled to recover attorneys' fees because, under New York law, there is no provision which provides that a court must award attorney's fees upon a finding of constructive and not actual fraud. Similarly, in *In re Cardon Realty Corp.,* 146 B.R. 72 (Bankr.W.D.N.Y.1992), the court denied the applicant's request for attorneys' fees on the grounds that the court based its grant of summary judgement on constructive fraud. In this case,

the Kovac Defendants' acts indicate actual intent to commit fraud upon the creditors of the estate.

Pursuant to DCL § 276–a, a party that succeeds in avoiding a transfer on the grounds of actual fraud under § 276 is entitled to recover its attorney's fees. *Continental Bank, N.A. v. Modansky,* 159 B.R., 129 at 135 (S.D.N.Y.1993). Accordingly, the Trustee is entitled to recover reasonable attorneys' fees incurred with respect to avoidance of the Transfer from Kovac and IKCC as they did have the necessary intent to defraud Defendant's creditors.

 The same rule is also applicable in cases where the trustee seeks attorneys' fees against a transferee. Attorneys' fees may not be awarded against a defendant who is a grantee of a fraudulent conveyance without a specific finding that he was aware of and participated in the actual fraud. *Carey v. Crescenzi,* 923 F.2d 18 (2nd Cir.1991). In *Carey,* although the court made a finding of actual fraud, it did not find that there was actual fraud with regard to the defendants, who were the grantees. Therefore, the Second Circuit opined that attorneys' fees were not warranted. Imputed fraud does not satisfy § 276–a. *Id.* Moreover, the court in *In re Hickey,* 168 B.R. 840 (Bankr.W.D.N.Y. 1994), took the same position as did the court in *Carey v. Crescenzi.* The *Hickey* Court opined that attorneys' fees could be imposed against a debtor who transferred property to his spouse, but attorneys' fees could not be assessed against the spouse absent evidence that she received the transfer with actual intent to hinder, delay or defraud creditors.

In the present case, attorneys' fees cannot be awarded absent a finding of intentional fraud on behalf of RAD. While this Court finds that Kovac acted with the intent to defraud creditors because, at first, he represented to everyone that the Commercial List was part of the Debtor's business and, when it later suited his purpose, he vigorously maintained that the list was

his, this Court does not find that RAD or Draizin acted with the same fraudulent intent. Although this Court imputes knowledge of an improper transfer of Debtor's property to it, there is no showing of an actual intent to defraud the creditor of this estate. Therefore, the court finds that Section 276–a is applicable as to the Kovac Defendants, but not applicable to RAD.

### BANKRUPTCY COURTS HAVE DISCRETION TO AWARD PRE-JUDGMENT INTEREST

 In an action to set aside a conveyance, the successful plaintiff may be awarded interest on the value of the property that was wrongfully transferred. Most of the cases in this area refer to this type of interest as prejudgment interest. Generally speaking, prejudgment interest is interest that accrues from the date of the transfer through the date a judgment is entered. Although prejudgment interest is most commonly awarded in breach of contract cases, *Terwilliger v. Terwilliger,* 206 F.3d 240 (2nd Cir.2000), bankruptcy courts have discretion to award prejudgment interest in fraudulent transfer cases, *In re Shape,* 176 B.R. 1 (Bankr.D.Me. 1994). In *Shape,* the court stated that an award of prejudgment interest is intended to "compensate the wronged person for deprivation of the monetary value of the loss from the time of the loss to the payment of the monetary loss." *Id.* at 3. The court awarded prejudgment interest from the date of the commencement of the proceeding. Bankruptcy courts have generally awarded prejudgment interest in fraudulent transfer actions from the time the demand is made or from the time an adversary proceeding is initiated. *In re Colonial Realty Co.,* 226 B.R. 513 (Bankr. Conn.1998). However, some cases appear to suggest that interest will be awarded from the date of the transfer where both the transferee and the debtor act together in concert to defraud the debtor's credi-

tors. *Jackson v. Star Sprinkler Corp. of Florida*, 575 F.2d 1223 (8th Cir.1978).

Most courts take the position that an award of prejudgment interest is justified in the following circumstances:

A) The need to fully compensate the wronged party for actual damages suffered;

B) Considerations of fairness and the relative equities of the award;

C) The remedial purpose of the statute involved; and/or

D) Such other general principles as are deemed relevant by the court.

■■■ *In re Colonial Realty Co.*, 226 B.R. at 526. Unlike an award of attorneys' fees, which is established by statute, there is no provision in the Bankruptcy Code addressing the appropriateness of an award of prejudgment interest. This type of award is purely discretionary.

■■■ In this case, RAD was a dominant force in its industry and admits knowing that Ivan Kovac was an officer and shareholder of the Debtor. It also knew that it was the Debtor's name and customers that were the subject of the joint venture. The way the agreement was constructed indicates that RAD knew it was to receive the benefit of Debtor's assets, no matter how Kovac structured the transfer. RAD sought to have an interest in Debtor's property along with the services of Kovac. After considering the circumstances, the RAD Defendants and the Kovac Defendants need to compensate the creditors of this estate for the actual damages suffered by this fraudulent conveyance. Therefore, the Court, in its discretion, awards prejudgment interest from the date of the transfer, May 1, 1993, as against the RAD and Kovac Defendants (not including Draizin individually). *See In re Cardon Realty Corp.*, 146 B.R. 72, 81 (Bankr. W.D.N.Y.1992) (trustee may recover interest on fraudulent transfer from date of transfer). The rate of interest shall be at the New York rate of nine (9%) percent per annum. *Id.*; N.Y. Civ. Prac. L. & R. 5004 (Mckinney 1992).

The Trustee's motion for summary judgment against Draizin is denied, and the cross-motion for summary judgment to dismiss the complaint against Draizin is granted. The Trustee has not presented any evidence indicating that Draizin was acting in any capacity other than as an officer of RAD. Accordingly, there is no basis for a claim against him in his individual capacity.

### CONVERSION

■■■ The Trustee's motion for summary judgment on his third claim for relief on the grounds of conversion is denied. Under New York Law, an action for conversion is subject to a three (3) year statute of limitation. CPLR 214(3). *See Vigilant Ins. Co. of America v. Housing Authority of the City of El Paso, Texas*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995). The accrual period runs from the date the conversion occurs. The Trustee's Complaint was filed more than three years after the transfer of the Commercial List to RAD and, accordingly, the claim for conversion is time barred. RAD's cross motion for summary judgment dismissing the third claim for relief is, therefore, granted.

### CONSTRUCTIVE TRUST, EQUITABLE LIEN, BENEFICIAL INTEREST

■■■ . In his fourth claim for relief, the Trustee seeks relief in the form of a constructive trust, an equitable lien, or a declaration that he has a beneficial interest in the Commercial List transferred to RAD. The requisite elements to support a constructive trust are (1) a confidential or fiduciary relationship between the parties; (2) a promise from one to the other party; (3) a transfer in reliance on the promise; and (4) unjust enrichment. The . allegations of constructive trust are inapplicable as against RAD as it had no fiduciary relationship with the Debtor. In the present case, relief is available to the Trustee

as against RAD by avoidance of the transfer as a fraudulent conveyance and a judgment for the value of the property transferred plus interest from the date of the transfer.

A hearing is required on the issue of valuation since the Court notes that, although the Commercial List was transferred to RAD (RAD Agreement, ¶ 1(a)), no value is ascribed to that asset under the terms of the RAD Agreement. Upon the determination of the value of the Debtor's Commercial List, a judgment will be entered in such amount, together with interest. Hence, the Trustee's motion for summary judgment on his fourth claim for relief as to RAD is denied, and RAD's cross motion to dismiss the fourth claim for relief is granted.

However, Plaintiff's request for relief as to Ivan Kovac is appropriate as he was the Debtor's sole shareholder and officer and as such, he owed a fiduciary duty to the Debtor, it is he who made an improper transfer of Debtor's property for which he was unjustly enriched. Therefore, Plaintiff's motion is granted and Plaintiff will be granted an equitable lien against the Kovac Defendants in the event they have or shall retain any interest in this property.

Plaintiffs have alleged a separate cause of action as to two checks paid to RAD from the Debtor. That issue is not being addressed herein, and will be taken up at the trial as to the value of the Debtor's assets transferred to RAD. Based on all of the above,

## ORDER

It is hereby:

ORDERED, that Plaintiff, Trustee of the Estate of All–American Petroleum Corp., have summary judgment pursuant to Sections 544(b) and 550 of the Bankruptcy Code and Sections 273, 274, 275 and 276 of the N.Y. Debtor and Creditor Law (i.e., actual intent fraud and constructive fraud), against Defendants Ivan Kovac and I. Kovac Consulting Corp., jointly and sev-

erally, in an amount to be determined after a hearing to evaluate the value of the fraudulently transferred assets as of May 1, 1993, the date of the transfer; and it is further

ORDERED, that the Plaintiff shall be entitled to prejudgment interest on the amount of its judgment against Defendants Ivan Kovac and I. Kovac Consulting Corp. at the rate of nine (9%) percent per annum from May 1, 1993, the date of the transfer; and it is further

ORDERED, that Plaintiff, Trustee of the Estate of All–American Petroleum Corp., have summary judgment against Defendants RAD Energy Corp. and All American Fuel, jointly and severally, pursuant to Sections 544(b) and 550 of the Bankruptcy Code and Sections 273, 274 and 275 of the N.Y. Debtor and Creditor Law for the fraudulent conveyance of Debtor's property in an amount to be determined after a hearing to evaluate the value of the Commercial List and/or other property fraudulently transferred to them; and it is further

ORDERED, that Plaintiff shall be entitled to prejudgment interest on the amount of its judgment against Defendants RAD Energy Corp. and All American Fuel, at the rate of nine (9%) percent per annum from May 1, 1993, the date of the transfer which judgment shall not include attorney's fees; and it is further

ORDERED, that pursuant to DCL § 276–a the Plaintiff is awarded judgment against Defendants Ivan Kovac and I. Kovac Consulting Corp., but not against the other defendants, in the amount of the Plaintiff's reasonable attorneys' fees in this action, to be fixed by the Court upon the filing and determination of a separate motion requesting such reasonable attorneys' fees; and it is further

ORDERED, that a hearing to determine the value of the Commercial List and/or other property of the estate fraudulently transferred shall be held on March 6, 2001, at 2:00 P.M.; and it is further

ORDERED, that the Trustee's motion for summary judgment on his third and fourth claims for relief against Defendants RAD Energy Corp. and All American Fuel is denied, and RAD's cross-motion as to the third and fourth claims for relief is granted; and it is further

ORDERED, that Plaintiff's third claim for relief against Defendants Ivan Kovac and I. Kovac Consulting Corp. for conversion is dismissed as time-barred; and it is further

ORDERED, that Plaintiff is awarded summary judgment on his fourth claim for relief against Defendants Ivan Kovac and I. Kovac Consulting Corp., and an equitable lien is granted in favor of the Plaintiff and against the Kovac Defendants in an amount to be determined after the valuation hearing, in the event they have or shall retain any interest in the property transferred under the RAD Agreement; and it is further

ORDERED, that the cross-motion to dismiss all claims against defendant Stephen S. Draizin's is granted.